R. P. ARNOLD ET AL. V. SOUTHERN PINE LUMBER COMPANY ET AL.

Decided December 9, 1909.

**Trust—Life Estate—Power of Appointment—Vested Remainder—Will—Estates of Decedents—Administrator's Sale.**

Land was conveyed to a husband in trust, to be held for the use of his wife during her natural life, the remainder for such person as she should appoint by will or deed, and in default of appointment for her children, with power in the wife during life and in the trustee for minor children after her death without making such appointment to sell for reinvestment. The husband died, devising all his property to his wife. The wife died, leaving by her will her property not specifically devised to her living children and descendants of those deceased. Her administrator had the property so conveyed in trust sold as part of her estate to pay expenses of last illness and costs of administration. In a suit between her children and those claiming under the administrator's sale, it is held:

(1) By the deed in trust the wife acquired only an equitable life estate with power of appointing the person to take the fee in remainder, which latter power did not enlarge the interest or affect the quality of her estate for life.

(2) The husband by the trust deed took only the naked legal title, asquiring not a property right, but a personal trust, and his devise to the wife conveyed no estate to her which could be subjected to the claims of creditors against her estate.

(3) In the absence of designation by the wife of a person to succeed to the remainder, it passed by the deed, which was on valuable consideration and a bargain and sale, to the children of the wife upon her death; their interest during her life was a vested estate in remainder, not contingent on some act to be done to create it but only subject to be defeated by the contingency of her making a different designation.

(4) The possession by the owner for life of a general power of appointment to succession to the remainder in fee will not render it a part of the estate of such life owner and subject to claims against such estate, when the property passes, if the power is not exercised, by virtue of the original grant and to persons thereby designated.

(5) A will disposing of his interest in land by a testator having the power to designate the succession in fee to the remainder after his life estate will be taken to be in execution of such power, where there is a reference to the power in the instrument, or a reference to the land on which the power is to be executed, or where the will would be otherwise ineffectual, that is, would have no operation except as an execution of the power; but if there be both an interest and a power in the testator, a general residuary clause in the will, unless from the whole instrument it appears to be intended as an execution of the power, will be applied to the testator's interest and not taken as an execution of the power.

(6) The testatrix having an interest in the fee in remainder by inheritance from children deceased in whom it had vested under the original conveyance, and making no disposition of it by will except by the residuary clause to her children and their descendants, this bequest would be construed as operating on her interest in fee, and not as an execution of her power of appointment, in which latter case it would be ineffective, as not changing the disposition of the title vested in the children if no appointment had been made.

(7) The children and descendants in such case took by purchase under

the original conveyance, except only as to such interest in the remainder as testatrix had inherited. The general fee in remainder created by such conveyance formed no part of the estate of testatrix, and no title to any part thereof not held by her through such inheritance passed to purchasers of the land at a sale by her administrator to satisfy debts against her estate.

(8) Where it was doubtful whether a testatrix intended the residuary devise as an execution of the power of appointment, or a devise of her own interest in the land, it should be given the latter effect; and it should not be taken as an exercise of the power of appointment where, as such, it made no change in the disposition of the property made by the deed in the absence of such designation.

(9) The conveyance of property in trust to the use of the wife, being in the nature of a family settlement so that no future husband could control the property, could not be changed into a fee simple in the beneficiary by a conveyance of the legal title from the trustee to her, or other agreement between the trustee and beneficiary.

Appeal from the District Court of Cherokee County. Tried below before Hon. James I. Perkins.

*Norman & Shook,* for appellants.—Mary E. Wallace took only an equitable life estate, with power of appointment, and at her death her interest or estate in the land terminated. Lockridge v. McCommon, 90 Texas, 239; Quisenberry v. Watkins, 92 Texas, 297; Brooks v. Everts, 33 Texas, 732, 744; Morris v. Eddins, 18 Texas Civ. App., 38; Weir v. Smith, 62 Texas, 1; Brandies v. Cochrane, 112 U. S., 28 Law Ed., 763.

The children of Mary E. Wallace took by the deed a vested remainder in fee, subject to be divested, however, by the appointment of such fee by said Mary E. to some other person or persons, by either deed or will. Buford v. Holliman, 10 Texas, 571; Greenlaw v. Dillion, 108 S. W., 706; McIlwaine's Dig. Laws of Texas, art. 632; 24 Am. & Eng. Ency. Law (2d ed.), 382, sec. 2, 384.

Mary E. Wallace's estate being but an equitable life estate, which terminated at her death, the order of the Probate Court of Taylor County was made without jurisdiction and is void and conferred no title on the purchaser. McIlwaine's Dig. L. of Texas, art. 1840; Mayo v. Tudor, 74 Texas, 472; Bradley v. Love, 60 Texas, 476; Groesbeck v. Groesbeck, 76 Texas, 658; Miers v. Betterton, 18 Texas Civ. App., 432; Wise v. O'Malley, 60 Texas, 589; Wadsworth v. Chick, 55 Texas, 242; Hamm v. Hutchins, 19 Texas Civ. App., 209; Vivion v. Nicholson, 116 S. W., 386.

Plaintiffs held during Mrs. Wallace's lifetime, and after the death of her husband the legal title to four-fifths of the 757 acres, amount sued for, but in trust for the use and benefit of said Mary E. Wallace, and they had a vested remainder in fee, subject to be divested only upon the appointment by said Mary E. Wallace, by deed or will, of the fee to persons other than said remaindermen, in which event they would have held the legal title in trust for such appointees. McIlwaine's Dig. Laws of Texas, art. 632; Lockridge v. McCommon, 90 Texas, 239; Quisenberry v. Watkins, 92 Texas, 297; Buford v. Holliman, 10 Texas, 571; Greenlaw v. Dillion, 108 S. W., 706; Brooks v. Evetts, 33 Texas, 732; Tendick v. Evetts, 38 Texas, 288; Morris v. Bock, 80 Texas, 156; 22 Am. & Eng. Enc. Law (2d ed.),

p. 1095, sec. 5; Weir v. Smith, 62 Texas, 1; Nesbit v. Richardson, 14 Texas, 656; 11 Am. & Eng. Ency. Law (2d ed.), 1133, sec. 14; Chace v. Gregg, 88 Texas, 558; Willis v. Smith, 65 Texas, 656; Wadsworth v. Chick, 55 Texas, 242.

Mary E. Wallace made no appointment of the 757 acres described in plaintiffs' petition, for four-fifths of which they sue, to others than the remaindermen designated in the deed from B. R. Wallace and wife; therefore, at her death, the legal trust title, equitable title outstanding in Mrs. Wallace, and the remainder in fee, instantly vested in plaintiffs and Mrs. Johnson, the surviving children and descendants of children of Mary E. Wallace; and the sale of their land by the Probate Court in administering Mary E. Wallace's estate was void, and did not divest their title. Bradley v. Love, 60 Texas, 476; Mayo v. Tudor, 74 Texas, 472; Groesbeck v. Groesbeck, 76 Texas, 658; Miers v. Betterton, 18 Texas Civ. App., 432; Wise v. O'Malley, 60 Texas, 589; Houston v. Killough, 80 Texas, 307; Lockridge v. McCommon, 90 Texas, 239; Miers v. Betterton, 18 Texas Civ. App., 430; Chace v. Gregg, 88 Texas, 558; Wadsworth v. Chick, 55 Texas, 242; Hamm v. Hutchins, 19 Texas Civ. App., 209; Vivion v. Nicholson, 116 S. W., 386.

If there was an appointment made by Mary E. Wallace in her will, it was to exactly the same persons who were the remaindermen in the deed under which she held, and also the custodians of the legal title of the land, and such an appointment would not destroy or subordinate the remainder in fee, to the title by appointment; and plaintiffs were entitled to recover as against said administrator's deed. Authorities first above cited.

Mary E. Wallace only had the power to appoint the remainder at her death in fee, and not to burden it with debts, and she did not attempt to do this; but even if her will should or could be construed to be an attempted appointment for that purpose it would be void, and would not authorize the Probate Court to order its sale for said debts, and such sale would be void and not divest plaintiffs' title, and it was error to instruct a verdict for defendants, based upon said sale. Balls v. Dampman, 1 L. R. A., 819; Lockridge v. McCommon, 90 Texas, 239; Quisenberry v. Watkins, 92 Texas, 297; 22 Am. & Eng. Ency. Law (2d ed.), 1121, sec. 5; Chace v. Gregg, 88 Texas, 558; Price v. Cherbonnier, 63 Atl. Rep., 209.

Under no circumstances could the land in question be held for the debts of Mary E. Wallace, because to do so would defeat the lawful purpose of the deed under which she held. Commonwealth v. Duffield, 12 Pa. St., 277; Wales v. Bowdish, 1 L. R. A., 545; Fleming v. Buchanan, 3 De G. M. & G., 976; Balls v. Dampman, 1 L. R. A., 54; Wales v. Dowdish, 4 L. R. A., 819; Trust Co. v. Kip, 85 N. E., 59; 19 Am. & Eng. Ency. of Law (2d ed.), 1317, sec. 9; Laurence v. Patterson, 7 L. R. A., 143; Price v. Cherbonnier, 63 Atl. Rep., 209.

*I. D. Fairchild* and *Ross & Wood*, for appellees.—The interest of the children of Mary E. Wallace in the property was that of takers expectant on failure of appointment, or contingent remaindermen, or expectant appointees under her will or deed, and they did not

take a vested remainder, upon a conditional limitation, as claimed by appellants. Bufford v. Holliman, 10 Texas, 571; Lockridge v. McCommon, 90 Texas, 234; King v. Rhew, 108 N. C., 76, 23 Am. St. Rep., 76; Green v. Grant, 18 L. R. A., 381; Bunting v. Speaks, 3 L. R. A., 690.

The plaintiffs, after the death of Wm. W. Wallace, and prior to the death of Mary E. Wallace, in any event, did not hold as heirs of Wm. W. Wallace the trust title formerly held by the said Wallace in the land in controversy, but the same passed under his will to Mary E. Wallace. A trust estate may be devised by will as well as pass by inheritance. Sanders' Heirs v. Morrison's Ex's, 7 T. B. Monroe, 54; s. c., 18 Am. Dec., 161; 1 Perry on Trust (4th ed.), secs. 335, 336, 337, 342; Atteberry v. Burnett, 102 Texas, 118; 11 Am. & Eng. Ency. of Law (2d ed.), 452; Webster's Dictionary, "et cetera;" Century Dictionary, "et cetera."

The power to control or destroy the trust rested in W. W. Wallace and Mary E. Wallace, and the will of W. W. Wallace and the acceptance of the property thereunder by Mary E. Wallace destroyed the trust and vested the entire interest in her "in fee simple and unlimited interest forever," in accordance with the express provision of the will of W. W. Wallace. King v. Rhew, 108 N. C., 696, 23 Am. St. Rep., 76; Weiss v. Goodhue, 98 Texas, 274; Green v. Grant, 18 L. R. A., 381; Bunting v. Speaks, 3 L. R. A., 690.

The contingent second remaindermen or expectant takers under the deed were the "children" of Mary E. Wallace, and the only persons belonging to this class at the time of her death were Mrs. Arnold and Mrs. Johnson, and if the property did not pass under the will of Mrs. Mary E. Wallace, it vested in Mrs. Florence Johnson and Mrs. Annie B. Arnold in equal shares, to the exclusion of grandchildren. Burgess v. Hargrove, 64 Texas, 110, 112; Cartwright v. Moore, 66 Texas, 55.

Mary E. Wallace had the entire title to the land in controversy and the Probate Court of Taylor County, therefore, had full jurisdiction over it in the administration of her estate. In any event she had more than an equitable life estate in the land in controversy. She had the trust title in fee and the power of appointment and passed the property under her will and it thereby became assets of her estate for the payment of debts, and the costs of administration. It practically became an estate of inheritance.

Execution of the power by the will: 1 Jarman on Wills, 6th Am. ed., 654; Bullerdick v. Wright, 148 Ind., 485, 47 N. E., 931; Emery v. Haven (N. H.), 35 Atl., 940; Kimball v. New Hampshire Bible Soc. (N. H.), 23 Atl., 83; Gulf Red Cedar Lumber Co. v. O'Neal, 131 Ala., 117, 30 So., 466, 90 Am. St. Rep., 23; Terry v. Rodahan, 79 Ga., 278, 11 Am. St. Rep., 420; Blagge v. Miles, 1 Story, 426, Fed. Cas., 1479; Wier v. Smith, 62 Texas, 1.

Appointed property became assets of estate of Mary E. Wallace. 11 Am. & Eng. Ency. of Law (2d ed.), 850; Johnson v. Cushing, 15 N. H., 298, 41 Am. Dec., 694; Clapp, Exr., v. Ingraham, 126 Mass., 200; 2 Jarman on Wills (6th Am. ed.), 565, star page 1429;

3 Williams Ev. (7th Am. ed.), 128; Brandies v. Cochrane, 112 U. S., 344, 353, 28 L. Ed., 763.

A last will disposing of a fee under a general power of appointment changes what would otherwise have been but a life estate into an estate of inheritance, and subjects the property appointed to the claims of the appointee's creditors in preference to the claim of the appointee.    40 Am. Dig. C., 485, sec. 77 (b), Powers, digesting Knowles v. Dodge, 1 Mackey, 66 (D. C.).

HODGES, ASSOCIATE JUSTICE.—In 1847 B. Rush Wallace and Rebecca Wallace, his wife, executed and delivered to William W. Wallace the following deed of conveyance:

"This indenture, made and entered into this 30th of January, 1847, between Benjamin R. Wallace and Rebecca R. Wallace, his wife, of San Augustine County, and State of Texas, of the first part; Wm. W. Wallace, of the county of Fauquier, and State of Virginia, of the second part, and Mary E. Wallace, wife of the said William W., of the same place, of the third part:    Witnesseth, that for and in consideration of the sum of two thousand dollars to the said Benjamin R. Wallace in hand paid by the said William W. Wallace at or before the sealing and delivering of these presents, the receipt of which is hereby acknowledged, and in fulfillment of a former, but defective, conveyance to the said Wm. W. Wallace, bearing date the 3d of September, 1845, and recorded in the county of Houston, Texas, we, the said Benjamin R. Wallace and Rebecca, his wife, have given, granted, bargained, sold and conveyed, and by these presents do give, grant, bargain, sell and convey unto the said Wm. W. Wallace, his heirs, etc., forever, the two following parcels or tracts of land, to wit: (Description omitted.)

"To have and to hold the half league of land herein conveyed, and containing two thousand two hundred and fourteen acres to him the said Wm. W. Wallace, his heirs, etc., forever, but in trust to hold the same for the sole, separate and exclusive use, benefit and behoof of the said Mary E. Wallace for and during the term of her natural life, so that neither her present nor any future husband shall have any interest in or control over the same, and in trust to hold the remainder thereof in fee for such person as the said Mary E. may appoint by either will or deed, and in default of such appointment, then for the children of the said Mary, the shares of the daughters to be held for their sole, separate and exclusive use and benefit.

"But the said Mary E. Wallace, it is understood, is to have full power, authority and right during her lifetime, and the said Wm. W. Wallace after her death and during the minority of any of her children, if the said Mary should fail to exercise her power of appointment, to sell and convey to any purchaser the whole or any part of the said half league of land, and invest the proceeds of such sale in other property in or out of Texas to be held to and upon the uses and trusts herein declared and set forth.

"And as to the other parcel of land, being the quarter league herein conveyed, containing eleven hundred and seven acres, the same is to be held in fee forever by the said Wm. W. Wallace and his heirs to

his and their only proper use, benefit and behoof." (Balance not material.)

In 1889 or 1891 William W. Wallace died, leaving a will in which he devised all of his property of every character to his wife, Mary E. Wallace, who is mentioned in the foregoing deed. Besides his wife he also left surviving him some children and their descendants. Mary E. Wallace died in January, 1901, leaving a will containing the following provisions:

"I, Mary E. Wallace, of the city of Abilene, State and county aforesaid, publish and declare this to be my last will and testament, to wit:

"First, all my debts and funeral expenses shall be first fully paid.

"Second, I give, devise and bequeath to my two daughters, Annie B. Arnold (wife of R. P. Arnold) and Florence G. Johnson (wife of H. H. Johnson) the house and lots in Abilene, which is now used by me as a residence, together with all my personal property and effects, to be divided between them, share and share alike. I also devise and bequeath to said Annie B. Arnold and Florence G. Johnson, my two daughters, all land and other real estate in Tarrant County, Texas, that remains unsold at my death, said land to be divided equally between them.

"Third. The remaining portion of my real estate situated in Texas and elsewhere I hereby bequeath to my children, W. W. Wallace, Annie B. Arnold, Florence G. Johnson and the children of my son, B. R. Wallace, deceased, and to Richard and William Waterhouse, the children of my deceased daughter, Mrs. Rosalie Waterhouse, to be equally divided between them. The children of B. R. Wallace to receive their father's share and Richard and William Waterhouse to receive their mother's share."

Mary E. Wallace was survived by two of her children, Mrs. Florence G. Johnson and Mrs. Annie B. Arnold. There were also grandchildren, descendants of some of her children who died previous to her decease. The evidence shows that she had previously conveyed through another acting as attorney in fact, some portions of the land described in the deed from B. R. Wallace and wife to W. W. Wallace, but that there was remaining of that original tract 757 acres, which is the land involved in this suit. In February, 1901, the will of Mrs. Wallace was presented for probate in the County Court of Taylor County by H. H. Johnson, husband of her daughter, Florence G., who was afterwards appointed administrator with the will annexed. In the inventory returned by Johnson is included the 757 acres of land involved in this suit, listed as the property of Mrs. Mary E. Wallace. The only other real property shown by the inventory to have belonged to her at the time of her death was a lot in the town of Abilene, Taylor County. The inventory also shows that Mrs. Wallace left some money and a number of notes and claims against other parties. There were no debts against her estate, except that incurred during her last sickness and her funeral expenses, which amounted to $65. In April, 1901, Johnson, as administrator, applied for and obtained an order from the County Court authorizing him to sell the tract of 757 acres of the Gibbs survey inventoried by him as a part of the estate of Mary E. Wallace the purpose assigned being

to secure funds with which to pay the debt of $65 and the expenses of the administration, which latter were estimated at $250. The land was sold by virtue of an order granted by the court, and was purchased by E. A. Blount, under whom the Southern Pine Lumber Company, one of the appellees, now claims title. In 1907 the appellants, Annie B. Arnold, joined by her husband, R. P. Arnold, and the other appellants, who were grandchildren of Mary E. Wallace, instituted this suit against the Southern Pine Lumber Company, seeking a recovery of four-fifths of the tract of 757 . acres of land, and asking for a partition. The petition conceded that the lumber company owned an undivided one-fifth interest, which we assume was based upon a conveyance made to the· company by Florence G. Johnson and her husband after the administrator's sale. The lumber company answered by a general demurrer and a plea of not guilty. It also impleaded those from whom it had purchased, and asked for a judgment on the warranty given in the event the appellants recovered in the suit.

The appellees relied for evidence of ownership of the entire interest in the land upon the conveyance from Johnson as administrator to Blount. They also relied upon a deed dated March 17, 1906, signed by Mrs. Florence G. Johnson and husband, and the appellant, Annie B. Arnold, conveying to Blount their entire interest in this Gibbs tract of land. The evidence shows that at the time this deed was executed Annie B. Arnold was a married woman, the wife of R. P. Arnold, who, it appears, for some reason did not join her in the conveyance. There was some controversy as to whether she and her husband were not at that time permanently separated; but upon that issue the testimony was conflicting. Appellees also offered in evidence in support of their claim of title an instrument dated August 25, 1902, signed by Richard Waterhouse, one of the appellants, a grandchild of Mary E. Wallace, purporting to convey an undivided half of his interest in this property to S. M. Johnson, and also conferring upon Johnson a power of attorney authorizing him to sell and convey the remaining interest owned by Waterhouse. They then offered in evidence a deed from S. M. Johnson executed in April, 1907, purporting to be made by virtue of the above mentioned power of attorney, conveying all of the interest of Richard Waterhouse in the land in controversy to J. E. Stephenson and H. N. Street, through whom the appellee lumber company deraigns title. At the conclusion of the testimony the court peremptorily instructed the jury to return a verdict in favor of the defendants; and from the judgment entered upon that verdict this appeal is prosecuted.

The testimony shows that B. R. Wallace, who executed the original conveyance referred to, was a brother of William W. Wallace. It also shows that the latter and his wife Mary had in all eight children, two of whom died in early life, and one at the age of seventeen years; three others lived to maturity, married, and died previous to the decease of Mary E. Wallace, leaving children who are parties to this suit. The instruction of the court to find in favor of the lumber company for the entire interest in the tract of land can be sustained only upon the assumption that the deed from Johnson to Blount had

the effect of conveying that interest to Blount. The deed executed by Mrs. Johnson and her husband, and Mrs. Annie B. Arnold without the concurrence of her husband, may or may not have conveyed Mrs. Arnold's interest, depending upon whether Mrs. Arnold and her husband were permanently separated at the time. It may be conceded that the deed from S. M. Johnson had the effect of conveying the entire interest of Richard Waterhouse; but there would still be other interests undisposed of except in so far as they could be by the administrator's deed. If that deed did not have the effect claimed for it, then it follows that the court erred in giving the peremptory instruction to the jury.

The pivotal question to be decided in this case is, did the property involved in this suit form any part of the assets of the estate of Mrs. Wallace upon her death, and thus become subject to administration? If it did not, then the title could not and did not pass by the deed of her administrator. If she died owning an undivided fee simple interest less than the whole, then the deed of her administrator passed title to only that interest. This, however, is contingent upon the further holding that she did not by the terms of her will exercise the power of appointment which had been given in the original deed. The deed from B. R. Wallace and wife had the effect, we think, to invest Mrs. Mary E. Wallace with only a life estate in the land, coupled with a general power to appoint by deed or will the person who should take the fee after her. By annexing to her life estate this general power of appointment, the conveyance did not enlarge her interest or affect the quality of her estate. Such an enlargement follows only when it appears that a restriction would defeat the manifest purpose entertained by the parties to the transaction. 4 Kent, 347-348; Lockridge v. McCommon, 90 Texas, 239, 38 S. W., 33; Garland v. Smith, 164 Mo., 1, 64 S. W., 189; Payne v. Johnson, 95 Ky., 175, 24 S. W., 240, 609; Weir v. Smith, 62 Texas, 1. A valuable consideration having been paid by W. W. Wallace for the conveyance, the transaction was one of bargain and sale, and the deed had the effect of devesting the grantors of the entire fee, leaving in them no reversionary interest, contingent upon the failure of Mrs. Wallace to exercise her power of appointment, and the failure of children or their descendants capable of taking the inheritance upon her death. But it is unnecessary to determine in whom that reversionary interest vested, inasmuch as there are no rights here involved which are made to depend upon locating this reversionary interest, the facts showing that there were children at the death of Mrs. Wallace who could take under the terms of the deed.

There is nothing in the original conveyance that indicates an intention to vest in Mrs. Wallace more than a life interest. It is true she was given a power of disposition during her lifetime, but it was clearly contemplated that she should reinvest the proceeds in other property to be held in trust upon the same terms and conditions. If at her death Mrs. Wallace owned more than a life estate, she must have acquired it by inheritance from some one or more of her deceased children, or by the devise from her husband. But the husband

had no beneficial interest which could be made available by his devise, except such as he may have obtained by inheritance from a deceased child during his lifetime. Under the deed he took only the naked legal title to be held for the use of the parties named; his interest was not a property right, but a personal trust. If he conveyed this it did not become an estate in Mrs. Wallace which might be subjected to the claims of creditors upon her death.

In determining the principal question involved in this appeal, we are not concerned so much with the extent of the interest owned by Mrs. Wallace, or the quality of her estate, as we are in ascertaining the quality of that estate which she did not hold in this particular property. Whatever may be said of the extent of her interest, or of the reversionary rights which might have resulted from the payment of a valuable consideration for the property, there was a remainder provided for in the deed. The fee was to go either to her children after her death or to someone whom she might designate either by deed or will. The appellants contend that the fee in the remainder vested in the children. Deeds should always be construed so as to give effect when possible to the intention of the parties. The language of this conveyance, after providing that W. W. Wallace shall hold the legal title as trustee during the life of Mrs. Wallace, is: "And in trust to hold the remainder thereof in fee for such person as the said Mary E. may appoint by either will or deed; and in default of such appointment, then for the children of the said Mary, the shares of the daughters to be held for their sole, separate and exclusive use and benefit." We think it is evident that it was the intention of the parties that the children of Mary Wallace should take the remainder in fee unless by deed or will she appointed some other person to take it. There would be no distortion of the language of this instrument to read it as saying, "to hold the remainder thereof in fee for the children of the said Mary, or for such person as she might by deed or will appoint," etc. With this transposition the rights of the children to the enjoyment of the property are made none the less contingent upon the exercise of the power of appointment; neither does it deprive Mrs. Wallace of any control over the ultimate disposition of the property. It should be noticed that the remainder which was limited to the children was not contingent upon the doing of some act, or the occurrence of some event, in order that it might take effect, but it became effective by the terms of the deed when it was delivered, and continued so until defeated by some affirmative act resulting from the exercise of the power of appointment. This, we think, gave to the interest conferred upon the children the characteristics of a vested remainder. Bufford v. Holliman, 10 Texas, 571, 60 Am. Dec., 223; Myers v. Adler, 1 L. R. A., 432, and notes; Culbreth v. Smith, 1 L. R. A., 538, and notes; 4 Kent, 226, 324, 325; 2 Washburn on Real Prop. (3d ed.), 507, 510, 526, 536; 2 Underhill on Wills, secs. 860-864; 24 Am. & Eng. Ency. of Law (2d ed.), 395. Chancellor Kent says (4th vol., 324), "When the object of a power is to create a perpetuity it is simply void, and when the power is void, or when no appointment is made out of it, the estates limited in the instrument conferring the power take effect

in the same manner as if the power had not been inserted.  While upon this subject, it is proper to notice the question which has been greatly discussed in the English courts, whether the estates limited in default of appointment are to be considered as vested or contingent during the continuance of the power.  The question was learnedly discussed in three successive arguments in the K. B. in Doe v. Martin, and settled upon great consideration that the estates so limited were vested, subject, notwithstanding, to be devested by the execution of the power.  The plain reason is that there is no estate limited under the power until the appointment be made."  Mr. Washburn (vol. 2, p. 536), says, after referring to instruments containing a power of appointment, "Sometimes the testator gives such a power in his will and then devises over the estate to take effect if and in case the power shall not be exercised.  Limitations of the latter kind are regarded remainders and as vested, although liable to be defeated if the appointment shall be made to another; for until it is made the possibility that it will be exercised does not create any estate, and therefore produces no effect upon the other limitations even though the power be to appoint in fee.  When exercised its effect is merely to defeat the estate limited and to divest it from him to whom it has been given."  The policy of holding the fee in abeyance is not favored in law, and it will therefore be considered as having vested upon the first opportunity.  2 Underhill on Wills, secs. 346, 861-864; 24 Am. & Eng. Ency. of Law (2d ed.), 384-385.  Where, as in this case, the fee was limited to the children as a class, it vested in each as they successively came into existence.  Tiedeman on Real Prop., sec. 302; 2 Washburn on Real Prop., 524; 24 Am. & Eng. Ency. of Law (2d ed.), 382-383.  If the children of Mrs. Wallace took a vested remainder this became an estate of inheritance and descended to their heirs as other property would.  2 Underhill on Wills, sec. 864; 2 Washburn on Real Prop., 549; 4 Kent, 262; Bufford v. Holliman, 10 Texas, 571.  It therefore follows from what has been said that unless we construe the will of Mrs. Wallace as an execution of her power of appointment, her children and grandchildren at her death took under the provisions of the original deed all interest in the property except such as she might have acquired by inheritance from some of her children who had previously died without leaving issue, or a similar interest by devise from her husband.  If this conclusion be correct, it was only that interest which the children received by devise from their mother that passed to them burdened with her debts.  It is insisted by the appellees that by reason of the fact that Mrs. Wallace held the general power of appointment over this property, it descended subject to administration as a part of the assets of her estate and was subject to the claims of her creditors.  We are referred to early English and American decisions which undoubtedly sustain that general view.  11 Am. & Eng. Ency. of Law, 852, and cases cited.  This doctrine, while severely criticised, seems to have been pretty generally followed in this country.  But an investigation of the authorities will show that the rule is applied only when the property so encumbered passes by virtue of the execution of the appointing power.  When the power is not exercised the prop-

erty passes by the terms of the original grant unencumbered by the debts of the donee of the power. Paterson v. Lawrence, 7 L. R. A. 143; 4 Kent, 324-325; Tiedeman on Real Prop., sec. 420; 31 Cyc. 1121. This brings us, then, to the question, did Mrs. Wallace exercise her appointing power in the will which she left? The only clause of that instrument which can, under any rule of construction, be regarded as an attempted execution of the power is the last, or residuary clause, in which she devises the remaining portion of her real estate situated in Texas and elsewhere to her children and grandchildren, naming the proportions in which they were to take. No mention is made in the will of this tract of land, nor is there any reference to the power as indicating a purpose to execute it. The rule adopted by the courts seems to be that there are three classes of cases in which it may be said that the power has been executed: (1) Where there is a reference to the power in the instrument; (2) where there is a reference to the property on which it is subject to be executed; and (3) where the provisions of the will or deed executed by the donee would otherwise be ineffectual, that is, would have no operation except as an execution of the power. 2 Underhill on Wills, sec. 801; Lane v. Lane, 103 Am. St. Rep., 122, 64 L. R. A., 849, and notes there collected. But, if upon the whole will, it appeared that the testator intended to execute the power of appointment, a general residuary clause will be held sufficient, although there may be no reference in the will to the power. It is well settled that if there be an interest and a power existing together in the same person over the same subject, and an act be done without particular reference to the power, it will be applied to the interest and not to the power. Weir v. Smith, 62 Texas, 1. The will in this case was made about two years before the death of the testatrix, and the record fails to show what property Mrs. Wallace had at that time. The inventory returned by her administrator shows that at the time of her death, she had no other real property in Texas except that which was specifically disposed of by other terms of the will. But she may have had other property at the time of its execution. If she did, then this clause of her will might have been intended for its disposition.

But assuming that she had no other property, the further question arises, did Mrs. Wallace have an interest in this property beyond her life estate? If we are correct in our conclusion that the children took a vested remainder and that this became an estate of inheritance which passed at their death to their heirs, then we think the record will justify us in holding that she did have an undivided fee simple interest in the remainder. The testimony shows that Mrs. Wallace had in all eight children, two of whom died in infancy and early life, and one who lived to be seventeen years of age. By computation from the facts stated in the record, we find that Mrs. Wallace was about twenty-nine years of age at the time the deed from B. R. Wallace and wife was made. The child who lived to be seventeen years of age must either have been living at that time, or was born afterwards. In either event, he acquired with the others a vested interest in the remainder, which, upon his death, would descend to his father

and mother if both were living; if not, then one-half to his mother, Mrs. Wallace, and the other half to his sisters and brothers. It may also be a fact that one or both of the children who died in infancy, or early life, lived after the execution of the deed from B. R. Wallace and wife. We are unable to tell whether this be true or not, inasmuch as the dates of their births and deaths are not given. If either or both were in existence at any time after the execution of the original deed, then the interests which they held passed by inheritance in the same manner as that of their seventeen-year-old brother referred. Without undertaking to say from the record what was the extent of this interest in the remainder which became vested in Mrs. Wallace by the death of her children, it is sufficient for us to know that she acquired some interest beyond her life estate. Having this interest upon which the residuary clause of the will might take effect, under the rule laid down in Weir v. Smith, supra, that application should be made. It should not, therefore, be regarded as an effort to execute the power, but rather as a disposition of her undivided interest in the remainder. Again, there was no occasion for Mrs. Wallace to execute the power in conferring this estate upon her children, or in making the distribution which she did among them, for the reason that by the terms of her will they received precisely the same estate they would have taken under the terms of the original deed. To attribute to her an attempt to execute the power in thus providing for her children would be to charge her with the doing of a futile act—one which could confer no benefit whatever. If we hold that it was an attempted execution of the power, we think it should be held ineffectual, for that reason. If the children took vested remainders under the original deed from B. R. Wallace and wife, the devise from their mother could not enlarge the interests so acquired. What they obtained from her was not the remainder by appointment, but a devise of the fee simple fractional interest held by her in the remainder as a tenant in common with them. At most, we think it extremely doubtful whether the testatrix in this instance intended by her will to make an appointment in pursuance of the power given her. In such cases it should be held that it was not an attempted execution of the power. Hill v. Conrad, 91 Texas, 341, 43 S. W., 789; Weir v. Smith, supra. If the property formed no part of the assets of the estate of Mrs. Wallace, then the deed from her administrator conveyed no title to the purchaser at the sale. If she owned an undivided interest derived from her deceased children, the deed from her administrator could affect that interest only. Bradley v. Love, 60 Texas, 472; Hickman v. Stewart, 69 Texas 259, 5 S. W., 835; Groesbeck v. Groesbeck, 78 Texas, 669, 14 S. W., 793; McDougal v. Bradford, 80 Texas, 566, 16 S. W., 621.

It is suggested by the appellees that B. R. Wallace and wife, having parted with their entire interest, W. W. Wallace and Mary E. Wallace had the power to destroy the trust and assume absolute ownership in fee simple, and that this was effectually done by the will of W. W. Wallace conveying all of his estate of every kind to Mary E., and that the property thereby became hers in fee. We do not concur in

this view, nor appreciate the force of the reasoning. W. W. Wallace and Mary, his wife, had the right to pay to B. R. Wallace a consideration for the land and to have the title conveyed to whom they pleased. This having been done, the title vested according to the terms of the conveyance, and could not be arbitrarily devested, nor disturbed in any way except according to the terms of the instrument upon which it depended. Monday v. Vance, 92 Texas, 428, 49 S. W., 516. This deed being in the nature of a family settlement, no resulting use in favor of Wallace and his wife by reason of the consideration having been paid by them in money would be presumed. The evident purpose to provide for Mrs. Wallace during her natural life so that no future husband could control the property, and for her children after her death, was so clearly expressed as to destroy any inference upon which could be based the idea that W. W. Wallace intended to retain in himself, or in himself and wife jointly, any superior right of dominion over the property. Hence, they could not by a subsequent agreement between themselves disregard the trust which had been created at their instance, and acquire any greater estate than had been reserved in the deed. The only method by which the remainder to the children of Mrs. Wallace could be defeated was by the exercise of the power of appointment given her.

Under our system the cestui qui trust is the real owner of the property, and the trustee merely the depository of the legal title. His is not a property right, but a legal duty founded upon a personal confidence; his estate is not that which can be enjoyed, but a power that may be exercised. Having assumed the relation of a trustee, W. W. Wallace would be held to a strict account and to the exercise of the utmost fidelity towards those for whose benefit he held title. By the terms of his will devising to her his entire estate, he conveyed no greater interest to Mrs. Wallace than he himself possessed.

Having reached the conclusion that the court erred in instructing a verdict for appellees, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Chief Justice Willson disqualified and not sitting.

Application by appellee for writ of error dismissed for want of jurisdiction.