# REPUBLIC NATIONAL BANK OF DALLAS V. IDA L. FREDERICKS ET AL

No. A-5105. Decided October 5, 1955.
Rehearing overruled November 9, 1955.
(283 S. W. 2d Series 39)

80

*John C. Harris* and *Julius H. Runge,* both of Dallas, for Republic National Bank of Dallas, *John N. Touchstone,* of Dallas, and *Coleman Gay,* of Austin, for Mrs. Dorothy Ebie Wright, petitioners.

The Court of Civil Appeals erred in holding that under the proviso in the will the trustee could not invade the corpus of the trust fund in cases of serious illness of a beneficiary, but that it could advance payments out of the income, and that in writing the proviso testator did a useless, and unnecessary thing. Weir v. Smith, 62 Texas 1; Cragin v. Frost National Bank, 164 S.W. 2d 24; Arnold v. Southern Pine Lbr. Co., 123 S.W. 1162—error dismissed.

*Bruce Graham,* of Dallas, for respondent.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This suit is a declaratory judgment action brought by the Republic National Bank of Dallas, Trustee, under the will of A. C. Ebie, deceased, and hereinafter called "Trustee" as plaintiff, in which Mrs. Dorothy Ebie Wright, hereinafter called "Mrs. Wright" and her husband, Frank Wright, and Mrs. Ida L. Fredericks, hereinafter called "Mrs. Fredericks," a widow, and Hope Cottage Association of Dallas, Texas, hereinafter called "Hope Cottage" were joined as defendants. The action sought construction of the will of A. C. Ebie, deceased, and also the will of Nelson Russell Ebie, hereinafter called "Russell," a son of A. C. Ebie, deceased, and a brother of Mrs. Wright; also a former husband of Mrs. Fredericks from whom she had obtained a divorce on October 1, 1940. A C. Ebie died on February 26, 1938, leaving a will which was probated on April 5, 1938, and under which will the Trustee is acting. Russell made his will on March 12, 1938, and he died on September 18, 1944, without any issue or having adopted any children. Mrs. Fredericks offered Russell's will for probate on March 5, 1947, and thereafter it was admited to probate. Mrs. Wright had no children, nor had she adopted any children up to the time this cause was argued in our Court on April 27, 1955.

The first question to be decided is: Does the Trustee have the power under the will of A. C. Ebie to use or advance any part of the corpus of the trust estate to pay for medical care and attention for Mrs. Wright in case of her serious illness? The second question is: Did Russell in his will exercise the power of appointment over 3/8ths of his father's estate so as to entitle Mrs. Fredericks to receive such part upon the death of Mrs. Wright without "issue of her own body or legally adopted children?"

The trial court held the Trustee had the power to make advancements for Mrs. Wright's serious illness and to charge any part of such advancements that were not repaid from income during her life to that part of the corpus over which Mrs. Wright has power of appointment. The trial court refused to construe the will of Russell upon the ground that such construction would be premature. The Court of Civil Appeals held that no part of the corpus should be used or advanced for Mrs. Wright's medical expenses but that the corpus must be held intact. It construed the will of Russell to have exercised the power of appointment given him by his father's will so that Mrs. Fredericks would take 3/8th of the trust estate upon the death of Mrs. Wright without issue or adopted children. 274 S.W. 2d 431.

In answering the first question paragraph Fourth of A. C. Ebie's will is the one to be construed. It reads as follows:

"FOURTH. The said trustee, after payment of my debts, funeral expenses, inheritance and estate taxes, expenses of administration, and bequests made in paragraph Second hereof, shall hold the balance of my said property and keep it invested and reinvested in good safe securities which shall be at least equal in security to those permitted by law for the investment by guardians of trust funds. The income from said trust fund shall be paid in equal shares to my beloved children, NELSON RUSSELL EBIE and MRS. DOROTHY EBIE WRIGHT, for and during the terms of their natural lives and in monthly payments.

"While I harbour a full measure of love and affection for my son and daughter, it is my continuing wish that they both be at all times self-sustaining by their own efforts independently of my bounty and to this end I direct my said trustee to not advance to either or both of my said children, any monthly payment or payments due under this trust, nor any part of the principal nor shall my said children anticipate any payment or pay-

ments due hereunder; Provided, however, that in case of serious illness the said trustee may, if in its sole discretion, it deems the cause sufficient, advance payments for said purpose only."

■ There is no contention made on behalf of any party to this cause that the will of A. C. Ebie is ambiguous. We agree that it is not ambiguous. This being true the meaning of the will must be determined by the language used "within the four corners of the instrument." The dominant purpose in the construction of a will is to ascertain the intention of the testator in the disposition of his estate. 44 Tex. Jur. 680, 681. A will should be so construed as to give effect to every part of it, if the language is reasonably susceptible of that construction. Dulin v. Moore, 96 Texas 135, 70 S.W. 742; Kuehn v. Bremer, Texas Civ. App., 132 S.W. 2d 295; wr. ref.; Hunt v. Carroll, Texas Civ. App., 157 S.W. 2d 429; dismissed, 140 Texas 424, 168 S.W. 2d 238.

In the second sentence of the first paragraph Fourth the testator says: *"The income* from said trust fund shall be paid in equal shares to my beloved children, Nelson Russell Ebie and Mrs. Dorothy Ebie Wright, for and during the terms of their natural lives and in *monthly payments."* (Emphasis added). We notice that he directs that the income from said trust fund shall be paid "to my beloved children" in equal shares. In the second paragraph of Fourth he says: "While I harbour a full measure of love and affection for my son and daughter * * *." In paragraph Fifth of the will the testator provides that in the event of the death of either his son or daughter without surviving issue "then the *entire income payable in monthly payments as hereinbefore provided* shall be paid in the same manner to the survivor during the term of his or her natural life." (Emphasis added).

In paragraph Sixth he provides that in the event his son or daughter should die leaving natural or adopted children, the said children should be paid the share of the income theretofore received by their deceased parent until the eldest of the children "reaches the age of majority." Upon the happening of this last named event, the testator provides "then the entire income of the trust estate herein shall be paid over to my son or my daughter then surviving *in monthly payments* as hereinbefore outlined." (Emphasis added).

In paragraph Seventh testator makes provisions for the distribution of the "balance of my property, consisting of said trust estate," to others, but conditions such distribution to out-

siders or strangers only "upon the death of both my son and my daughter" without leaving "any issue of their own bodies, or legally adopted children."

■ When we consider the language of the will as a whole and give due regard to all the provisions therein, we are convinced that the paramount purpose of A. C. Ebie was to provide for the comfort, care and support of his two children above any desire to benefit strangers or outsiders. How was this desire on the part of the testator to be accomplished? First, the testator directs that all of the income from the trust estate shall be paid by the Trustee in equal shares and *"in monthly payments"* to the two children, or children of a deceased child during the minority of such children. In the event only one of the testator's children should remain surviving, and after the eldest of the deceased child's natural or adopted children has attained the age of majority, then the total income shall be paid to the surviving child of testator "in monthly payments as hereinbefore outlined." Testator uses the term "in monthly payments" twice in paragraph Fourth, once in paragraph Fifth and twice in paragraph Sixth. Therefore, there can be no argument but that the testator meant and intended that the Trustee should pay out the income as it accrued in monthly payments to his two children. There is no dispute about this point. Mrs. Fredericks, in her brief in the Court of Civil Appeals and which brief she specifically adopts and refers to as containing her detailed argument in her answer to the application for writ of error in this Court, says:

"In the first section of paragraph Fourth, A. C. Ebie directed the bank to pay income in equal monthly shares to his children. He said the income 'shall be paid' and gave the Trustee no discretion on that point. Therefore, every month the Trustee owed the children a monthly income, and such income was consequently the subject of a 'debtor-creditor relationship.' "

The Trustee being given no discretion as to the amount of monthly payments of income to be paid to the children, it follows that, except by agreement of the child or children, they were entitled to receive these monthly payments and the Trustee would accumulate no income beyond month to month.

After the death of Russell in 1944, the Trustee and Mrs. Wright did make an agreement in October, 1949, that out of the total income from said trust fund, the Trustee would pay Mrs. Wright only $600.00 per month, and withhold the balance

eventually totaling $3,416.00 of total annual income to be received to pay Mrs. Wright's medical expenses in treating her for her various illnesses. The proof shows that since the death of her brother, Mrs. Wright has suffered from a broken leg requiring hospitalization in 1944; and at the date of the trial was suffering from arterial hypertension, cirrhosis of the liver, uremia and chronic alcoholism. The proof shows that these illnesses are serious ones, and that they have in the past and will in the future require substantial periods of hospitalization for Mrs. Wright and much medical care and attention for the remainder of her life.

To pay the bills for treatment of these serious illnesses, the Trustee has not only expended the income withheld from Mrs. Wright, but to date of trial, in its discretion, has paid out an additional sum of $9,049.49, which has come from the corpus of the estate. Were these expenditures properly paid for by the Trustee out of the corpus of the trust estate? We hold they were.

As we have pointed out above, A. C. Ebie intended and directed all the income to be paid to his children each month as it accrued for their use and benefit. In the second paragraph of paragraph Fourth, testator recognizes that his children are not to be trusted with handling very much money and specifically directs the Trustee "to not advance to either or both of my said children, any monthly payment or payments due under this trust, nor any part of the principal nor shall my said children anticipate any payment or payments due hereunder * * * ." Thus far we have a direct and absolute prohibition against any advancements of income, or any advancements or payments from the corpus of the trust estate. But testator did not stop at this point. He added "Provided, however, that *in case of serious illness* the said trustee may, if *in its sole discretion,* it deems the cause sufficient, advance payments *for said purposes only.*" (*Emphasis added*). Testator meant something by putting this clause in his will. He could not have referred only to the income from the trust fund because in other portions of his will he had directed the payment of all the income in monthly payments to his children. To hold this "provided, however" applies only to income is to hold that it meant nothing and added nothing new to the will. In the first part of this second paragraph immediately preceding the "provided, however," testator expressly recognized the difference between income and principal under this trust, thus showing he had in mind such distinction. In this "provided, however" clause he does not make the distinction between "advance payments" from "income" and from

"principal" to be made by the Trustee "in its sole discretion" "in case of serious illness." This shows that testator recognized that the income from the trust might not be sufficient to care for the children "in case of serious illness," and he wanted the Trustee to have the discretion if "it deems the cause sufficient" to make payments out of the corpus. This is the only construction we can place on this proviso which will give it meaning, or will explain why testator included it in his will. "It will not be presumed that the testator intended * * * to do any useless thing." 44 Tex. Jur. 747, *Wills*, Sec. 181.

■ All of the words used by the testator in his will and which express his wish for the distribution of his estate on his death should be interpreted in the sense in which they were used, in order that the plan of distribution of his estate may be enforced. Kuehn v. Bremer, supra, and authorities therein cited.

We hold that in case of serious illness of Mrs. Wright the Trustee, in its sole discretion, and if it deems the cause sufficient, was and is authorized to advance the funds for Mrs. Wright's medical treatment out of the corpus of the trust fund in the event the amount of the income from the corpus reserved from the requirement of monthly payments by agreement between the Trustee and Mrs. Wright should be insufficient to pay such medical expenses.

■ Mrs. Fredericks relies upon the case of Hays v. Harter, 1943, Tex. Civ. App., 177 S.W. 2d 797, wr. ref., to sustain her proposition that the Trustee cannot pay for medical expenses out of the corpus. We do not construe that case as holding anything contrary to our holding herein. In fact, that part of the Hays v. Harter case quoted in the Court of Civil Appeals' opinion is in harmony with our holding in this case. In Hays v. Harter, the Court says that where a will is clear, unequivocal and unambiguous in its terms, that a certain thing shall be done (in that case to pay off the debt against Mrs. Harter's homestead) it will admit of no contrary construction. (1-3) We also agree that the trustee has only such powers as are conferred on him by the instrument creating the trust as these powers are not in conflict with the Trust Act, Articles 7425b-1 to 7425b-47, Vernon's Annotated Civil Statutes. We have held that the will of A. C. Ebie, when considered from its four corners and considering all the language used in the will, authorizes the Trustee, in its discretion, to resort to the corpus of the trust estate for the benefit of Mrs. Wright in case of serious illness.

Other cases are cited which hold that the fact that the testator did not use language expressly providing for an invasion of the corpus strongly indicates that he intended the corpus should remain intact, and not be subjected to the payment of medical expenses of Mrs. Wright's serious illness. Under this will Mrs. Wright occupied the position of a life tenant with right to receive the income from the trust estate. We believe the better rule is as stated in 33 Am. Jur. 724, Sec. 237, wherein it is stated:

"The question whether the beneficiary of a life estate has an implied power to use the principal or corpus has most frequently arisen where the testator has used some form of expression indicating an expectation that the subject of the gift may undergo diminution during the continuance of the particular estate. Accordingly, a right on the part of the first taker to entrench upon the principal or corpus has been inferred where the gift over is described as being of all, what, or so much as remains, or some very substantially similar expression, what is unused, not consumed, unexpended, or undisposed of, what is left, or substantially similar expressions, the residue, the balance, or very like terminology, the surplus, and all the property that may revert. * * * "

And also the same authority, p. 726, Sec. 239, wherein it is stated:

"The fact that a gift for life is stated to be for support and maintenance of donee, or of the donee and children, is sometimes regarded as implying a right to use the corpus where necessary to provide support and maintenance. Such a result clearly follows where the gift over is subjected to the maintenance of the first taker * * * ."

■ We come next to the question as to whether or not Russell exercised in his will the power of appointment over the 3/8th interest in his father's estate, which is given by the will of A. C. Ebie. This power is thus set out in the paragraph Seventh of the father's will. After stating that should both the son and daughter die without leaving "any issue of their own bodies or legally adopted children" the balance of his property consisting of the trust estate was to be distributed 1/4th to Hope Cottage, and the other 3/4ths as follows: "One half (1/2) to the legatees and devisees of my said son, in accordance with his last will and testament, if he shall leave a will, or if not * * * ." A like provision was made for the other 1/2 to go to legatees and devisees of his daughter.

Mrs. Fredericks contends that this is not a power of appointment, but a designation of a class which is to take such 3/8ths interest, to wit: The devisees and legatees of the son in accordance with his last will and testament. We hold, as did the Court of Civil Appeals, that the above quoted provisions from A. C. Ebie's will gave a power of appointment to Russell and Mrs. Wright each as to 3/8th of the balance of the trust estate, at their respective deaths, subject, of course, to leaving natural or legally adopted children.

■ Subject to certain restrictions, the common law accords to the individual a right to delegate to another person the power of designating or selecting the takers of his property. The authority thus to control the disposition of the estate of the grantor or testator is referred to as a "power of appointment." 33 Tex. Jur. 757, et seq.

"(1) Except as stated in Subsection (2), a power of appointment, as the term is used in this Restatement, is a power created or reserved by a person (the donor) having property subject to his disposition enabling the donee of the power to designate, within such limits as the donor may prescribe, the transferees of the property or the shares in which it shall be received." Restatement of the Law, *Property,* p. 1818, Sec. 318.

The exception covers power of sale, power of attorney and other like powers.

"A power of appointment is a power of disposition given to a person over property not his own, by some one who directs the mode in which that power shall be exercised by a particular instrument. It is an authority to do an act which the owner granting the power might himself lawfully perform." Thompson on Wills, 3rd Ed., p. 596, Sec. 400.

See also 41 Am. Jur. 806, et seq.

The will of Russell contained no reference to the power of appointment given him by virtue of the terms of his father's will. The provision of Russell's will under which Mrs. Fredericks claims is as follows:

"SECOND. I devise and bequeath unto my beloved wife, Ida L. Ebie, all the property, both real and personal, that I may die seized and possessed of, after the payment of my just debts and all the expenses incident to the probating of this will; and it

is my will that it shall pass to and vest in her in fee simple to manage, control, mortgage, sell, and dispose of as she may wish or see proper."

In the case of Weir v. Smith, 62 Texas 1, Judge Stayton quotes the correct rule to be applied in determining whether or not a power of appointment has been exercised, as follows:

"The rule in reference to the execution of powers either by deed or will, and of construction, are so clearly stated by Chancelor Kent that we cannot do better than to state it in his language:

" ' * * * In Sloan v. Cadogan, it was declared by the master of the rolls, after a full discussion, to be settled, that a general disposition by will would not include property over which the party had only a power, unless an intention to execute the power could be inferred. A will need not contain express evidence of an intention to execute a power. If the will be made without any reference to the power, it operates as an appointment under the power, provided it cannot have operation without the power. The intent must be so clear that no other reasonable intent can be imputed to the will; and if the will does not refer to a power, or the subject of it, and if the words of the will may be satisfied without supposing an intention to execute the power, then, unless, the intent to execute the power be clearly expressed, it is no execution of it.' 4 Kent, 335."

■ The leading case on this subject is Blagge v. Mills, (Cir. Ct. D. Mass. 1841), 1 Story 426, 3 Fed. Cases 559, wherein three tests are prescribed for determining if a power of appointment has been exercised. The tests are (1) where there is a reference to the power in the instrument; (2) where there is a reference to the property on which it is subject to be executed; and (3) where the provisions of the will or deed executed by the donee would otherwise be ineffectual; i.e., would have no operation except as an execution of the power.

The general rule is that in order for a will or deed to constitute the exercise of a power of appointment the intent to exercise such power must be so clear that no other reasonable intent can be imputed under the will. The will must refer to the power of appointment or to the property subject to such power, or the donee of the power must have owned no other property to which the will could have attached and thus the will have been a vain and useless thing except it be held to be an exercise of the power. Weir v. Smith, supra; Seguin State Bank & Trust

Co. v. Locke, Tex. Civ. App., 73 S.W. 2d 645, affirmed, 129 Texas 524, 102 S.W. 2d 1050; Arnold v. Southern Pine Lumber Co. (1910), 58 Tex. Civ. App., 186, 123 S.W. 1162, wr. dism.; Restatement of the Law, Vol. 3, p. 343; Anno. 91 A.L.R. 443; 104 A.L.R. 1455; 127 A.L.R. 248. " * * * If, from the circumstances or the instrument executed, it be doubtful as to whether it was the intention to execute the power possessed by the grantor, then it will not be held that by such act or conveyance that power was in fact executed." Hill v. Conrad, (1897), 91 Texas 341, 43 S.W. 789, (2) ; Blagge v. Mills, supra.

With the above rules of law in mind we will examine the will of Russell and the circumstances surrounding its execution in March, 1938, to determine if the will would be ineffectual and meaningless unless it be held to be an exercise of the power of appointment which Russell had under A. C. Ebie's will. We find no reference in the will to this power of appointment; nor do we find any language stating the will is exercising such power of appointment; nor do we find any reference to A. C. Ebie's estate, either directly or by interpretation. Russell's will says: "I devise and bequeath unto my beloved wife, Ida L. Ebie, all the property, both real and personal, that I may die seized and possessed of, * * * ." Did Russell have any property of his own at the making of his will, separate and apart from his interest in his father's estate given by the power of appointment in A. C. Ebie's will? We must answer that he did own other property at such time. In 1940 when Mrs. Ebie, now Mrs. Fredericks, filed her petition for divorce against Russell, she alleged that she and Russell were married on February 3, 1934; that during their marriage they had accumulated certain property both real and personal. The real property was described as a duplex garage apartment located on a designated street address in the city of Dallas, Texas. In the judgment of divorce dated October 1, 1940, a property settlement and agreement between the parties was incorporated in full and expressly approved and ratified and made the decree of the court. This property settlement describes in detail the community property both real and personal as set out in plaintiff's petition, except that in addition to the street address as contained in her petition the property settlement adopted by the court as its judgment gives a metes and bounds description of the real property. Further, such settlement recites that the real property is the same the property settlement adopted by the court as its judgment Ida L. Ebie, dated May 10, 1937, and giving the volume and page of record in the Deed Records of Dallas County, Texas. The divorce judgment set aside the real estate to Ida "for her sup-

port and maintenance for the remainder of her natural life, or until such time as she shall marry * * *," together with all rents and revenues from such real property. It also gave Ida all the personal property owned by the parties, except the diamond ring and stick pin (which she had alleged were worth approximately $1,000.00 each) were given to Russell. Thus we see Russell did own property at the time he made his will in 1938 that could pass under his will. Therefore, his will cannot be held to exercise the power of appointment given him under his father's will.

■ Mrs. Fredericks contends that the inventory and appraisement of Russell's estate, filed in connection with the probate of Russell's will, conclusively shows that Russell had no estate at the time of his death. This inventory and appraisement was not offered during the trial of the case but some four months after final judgment had been rendered by the trial court, and about three months after the record on appeal had been filed in the Court of Civil Appeals, Mrs. Fredericks offered the inventory and appraisement in the trial court under Rule 270, Vernon's Texas Rules of Civil Procedure. The trial court refused to admit it in evidence, but same being sent up to the Court of Civil Appeals by supplemental transcript, the Court of Civil Appeals considered it, and in part based its judgment thereon. We think this was error for the following reasons: (1) Rule 270 vests the trial court with discretion in permitting admission of evidence so offered and we find no abuse of this discretion; (2) the recitals of inventory and appraisement by the terms of Article 3424, R.C.S., 1925 as amended, are not conclusive on the nature or extent of the deceased's estate, (Sec. 261 of New Probate Code, effective January 1, 1956) ; (3) the property which Russell owned at the time he made his will instead of the property he owned at the time of his death is determinative of the question here under consideration. Murphy v. Honeycutt, 1946, Tex. Civ. App., 199 S.W. 2d 298, wr. ref.; Verhalen v. Klein, 1924, Tex. Civ. App., 268 S.W. 975, no writ history, and authorities cited therein.

■ Mrs. Fredericks further relies upon the fact that Russell executed his will only a few days after his father's death, and this shows Russell knew of the power of appointment given him by his father's will, and sought to exercise same by making his own will at that time. To our mind, these facts emphasize that Russell did not intend to exercise such power of appointment. The language of the will shows that it was most probably drawn by an attorney. It seems most improbable to us that either Russell or an attorney knowing of the power of appointment, and

seeking to draw a will exercising such power, would omit in the will drawn any reference whatever to such power. Mrs. Fredericks relies on the case of Cragin v. Frost National Bank of San Antonio, Tex. Civ. App., 164 S.W. 2d 24, wr. ref., to support her argument above. We think the facts of the Cragin case are so different from our facts that that case is not controlling.

The judgments of both courts below are reversed and judgment rendered in accordance with this opinion that the Trustee, under the will of A. C. Ebie, deceased, may, in its discretion, make payments from the corpus of the trust estate for medical expenses necessary for Mrs. Wright's serious illness. It is held that by his will Russell Ebie did not exercise the power of appointment given him by his father over 3/8th of the trust estate.

Opinion delivered October 5, 1955.

MR. JUSTICE WALKER, joined by JUSTICE CALVERT dissenting.

I am unable to agree that under the terms of the will of A. C. Ebie, deceased, the trustee is authorized to make an absolute invasion of the corpus of the trust estate for the purpose of paying Mrs. Wright's medical expenses. The word "payments" appears four times in the fourth paragraph of the will, and in the first three instances unquestionably refers to the monthly payments to the son and daughter from the income of the trust. At one point the testator expressly distinguishes such payments from the principal of the trust. It seems clear to me, therefore, that the word was used in the same sense in the final clause of the paragraph, and that the testator intended by such clause to authorize the trustee to make advances against the income of the trust.

The earlier provision of the will directing that the income from the trust be paid to the son and daughter in monthly payments, negatives an intention that the trustee should accumulate the income to provide for the contingency mentioned in the final clause of the fourth paragraph. The power of the trustee to borrow from the corpus for the purpose of advancing payments against income in case of serious illness appears to me, therefore, to be implicit in the provision authorizing the payments to be advanced for that purpose.

It is my opinion that the will should be construed to mean that the trustee may, in the event of Mrs. Wright's serious ill-

ness, make advances to her against future income of the trust and borrow from the corpus of the trust for that purpose, and that in such event the income subsequently received by the trustee should be used to restore the corpus before the usual and normal distributions of income to Mrs. Wright are resumed.

I agree with the majority that the will of Nelson Russell Ebie does not constitute an exercise of the power of appointment conferred upon him by the will of A. C. Ebie.

Opinion delivered October 5, 1955.

Rehearing overruled November 9, 1955.