### SOUTHERN PINE LUMBER CO. et al. v. ARNOLD et al.

(Court of Civil Appeals of Texas. Texarkana. July 14, 1911. Rehearing Denied Oct. 5, 1911.)

**1. APPEAL AND ERROR (§ 719*)—ASSIGNMENT OF ERROR — FUNDAMENTAL ERROR — DIRECTION OF VERDICT.**

Error in peremptorily directing a verdict is fundamental, requiring review on appeal without any specific assignment of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968–2982; Dec. Dig. § 719.*]

**2. DEEDS (§ 130*) — CONSTRUCTION — ESTATE CREATED—REVERSIONS.**

A deed for a valuable consideration conveying land to a grantee and his heirs forever, in trust for his wife, for life, and in trust to hold the remainder in fee for such persons as she may appoint by will or deed, or in default of appointment for her children, divests the grantors of the entire fee, leaving them no reversionary interest, contingent on failure of beneficiaries, or failure to exercise the power of appointment.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 366–374; Dec. Dig. § 130.*]

**3. DEEDS (§ 129*)—CONSTRUCTION—LIFE ESTATE.**

A deed conveyed land to a husband in trust for his wife for life, and in trust to hold the remainder in fee for such persons as she might appoint by will or deed, and gave her power of disposition during life; the proceeds to be invested in other property for the same uses. Held, that the wife acquired but a life estate, which was not enlarged, though coupled with a general power of appointment.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 360–365, 416–435; Dec. Dig. § 129.*]

**4. TRUSTS (§ 136*)—ESTATE OF TRUSTEE.**

A deed conveying land for a valuable consideration to a husband in trust for the use of his wife, for life, and in trust to hold the remainder in fee for such persons as she might appoint by will or deed, or in default of appointment for her children, did not give to the husband any property interest; he being merely the holder of the naked legal title, in trust for the owners of the beneficial interest.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 179; Dec. Dig. § 136.*]

**5. DEEDS (§ 133*) — CONSTRUCTION — ESTATE CREATED.**

A deed conveyed land to a husband in trust for his wife for life, and to hold the remainder in fee for such persons as she might appoint by will or deed, or, in default of appointment, for her children. Held, that the children took a vested remainder.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 368–371; Dec. Dig. § 133.*]

**6. POWERS (§ 41*)—RIGHTS OF APPOINTEES—ESTATES ACQUIRED.**

Held, further, that though the wife appointed the estate to her children by her will, yet they still held under the original deed as remaindermen and not under the execution of the power.

[Ed. Note.—For other cases, see Powers, Dec. Dig. § 41.*]

**7. POWERS (§ 36*)—EXECUTION.**

Where one having an estate for life with power of appointment by will or deed acquired an interest beyond the life estate, a general residuary clause in her will without reference to the power must be applied to her acquired interest and not to the power.

[Ed. Note.—For other cases, see Powers, Dec. Dig. § 36.*]

**8. TRESPASS TO TRY TITLE (§ 39*)—TITLE—EVIDENCE.**

Where one having a life estate, with power of appointment by will or deed, acquired an interest in fee by inheritance, and executed a will containing a general residuary clause, evidence of deeds executed by her conveying part of the premises was inadmissible to show that the residuary clause referred to the unsold part of the estate, subject to appointment.

[Ed. Note.—For other cases, see Trespass to Try Title, Dec. Dig. § 39.*]

**9. POWERS (§ 41*) — EXECUTION — RIGHTS OF APPOINTEES.**

Where a wife having a life estate, with power of appointment by will or deed, and with power to sell and to invest the proceeds for the purposes of a trust, created by deed conveying land to her husband, in trust for her use for life, and in trust to hold the remainder for such persons as she might appoint, or, in default of appointment, to her children, after inheriting part of the fee from children dying, conveyed a part of the premises and received notes in part payment, and subsequently executed a will devising the residue of her estate to her children, a child accepting his share of the notes shown in the inventory was not estopped from claiming that the estate disposed of by the will did not apply to the estate subject to appointment.

[Ed. Note.—For other cases, see Powers, Dec. Dig. § 41.*]

**10. DEEDS (§ 50*)—EXECUTION—STATUTES.**

Sayles' Ann. Civ. St. 1897, art. 624, providing that conveyances must be in writing, subscribed and delivered by the grantor or his agent thereunto authorized by writing, contemplates that the name of the grantor shall be subscribed to a writing having the essentials of a conveyance, and that the signature shall be affixed by him or by some one authorized by him in writing, and where a grantor signs in blank and verbally commits to another to write or not to write a conveyance over his signature with power to determine whether the conveyance shall be filled in and delivered, and to whom the grant shall be made and to what property it shall apply, the instrument is incomplete, and the authority to fill the blanks and deliver the instrument is ineffectual.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 96; Dec. Dig. § 50.*]

**11. ESTOPPEL (§ 116*)—BURDEN OF PROOF.**

One relying on facts which will estop another from asserting the legal insufficiency of a conveyance has the burden of alleging and proving them.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 306; Dec. Dig. § 116.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

**12. APPEAL AND ERROR (§ 742*) — ASSIGN- MENTS OF ERROR — PROPOSITIONS — STATE- MENTS.**

Where no statement follows a proposition under an assignment, the proposition will not be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

**13. COVENANTS (§ 131*) — BREACH OF COVE- NANTS—WARRANTY.**

Where the holder of the superior title re- covered the premises from a grantee in a war- ranty deed executed by third persons, but did not claim any mesne profits, and there was no evidence to show whether the premises were oc- cupied or any rents derived from their use, the allowance of interest against the third persons in favor of their grantee from the date of their deed was not erroneous.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 254; Dec. Dig. § 131.*]

Appeal from District Court, Cherokee County; James I. Perkins, Judge.

Action by R. P. Arnold and others against the Southern Pine Lumber Company inter- pleading J. E. Stephenson and others. From a judgment for plaintiffs, defendant and cer- tain of the interpleaders appeal. Affirmed.

I. D. Fairchild and Ross & Wood, for ap- pellants. Norman & Shook and W. M. Imboden, for appellees.

HODGES, J. This is an action of tres- pass to try title and for partition, instituted in the district court of Cherokee county by Annie B. Arnold and her husband, R. P. Arnold, W. W. Waterhouse, R. G. Water- house, Mrs. Mary E. Wallace, Lottie Wallace, Lucian Wallace, Mary Wallace, Willie Wal- lace, the last three named being minors suing by their mother and next friend, Mary E. Wallace, Mrs. Nora Wallace, William Wal- lace, Nora Wallace, Annie Gay Wallace, and Gertrude Wallace, the last two being minors suing by their mother and next friend, Mrs. Nora Wallace, and W. H. Shook and T. B. Lewis against the Southern Pine Lumber Company, a private corporation. The suit was originally for the recovery of an un- divided one-fifth of 757 acres of land, a part of the south half of the Z. Gibbs survey situated in Cherokee county. Upon the first trial there was a judgment for the defend- ants, which was reversed on appeal to this court, and the cause remanded. The case was styled R. P. Arnold et al. v. Southern Pine Lumber Company et al., and is reported in 123 S. W. 1162. The Southern Pine Lumber Company interpleaded as warrantors J. E. Stephenson and H. N. Street, from whom it purchased directly, and J. L. Ste- phenson and E. A. Blount, who were war- rantors in the deed to J. E. Stephenson and H. N. Street. All of the last-named par- ties were nonresidents of Cherokee county, and all answered and appeared at the trial except J. L. Stephenson, who had, however, been served with citation. After the re- versal of the case upon the former appeal,

the plaintiffs filed an amended original peti- tion, in which they conceded that the South- ern Pine Lumber Company had title to an undivided three-sevenths of the 757-acre tract, and sought a recovery of the balance only and for partition. Upon the second trial a judgment was rendered in favor of the plaintiffs, the appellees here, for four- sevenths of the land and for partition, and in favor of the defendant Southern Pine Lumber Company against J. E. Stephenson and Street for $3,460.56 with 6 per cent. interest from March 27, 1907, that being the date of their deed; also, against J. L. Stephenson for $837.20 and against E. A. Blount for $586.20, interest on the latter being allowed only from the date of the judg- ment. The Southern Pine Lumber Company and J. E. Stephenson and H. N. Street only have appealed.

It is conceded that the common source of title under which all of the parties claim is the following deed from B. R. and Rebecca Wallace, executed in 1847: "This indenture, made and entered into this 30th of Jan- uary, 1847, between Benjamin R. Wallace and Rebecca R. Wallace, his wife, of San Augustine county and state of Texas, of the first part, and Wm. W. Wallace of the county of Fauquier and state of Virginia of the second part, and Mary E. Wallace, wife of the said William W., of the same place, of the third part, witnesseth: That for and in considera- tion of the sum of two thousand dollars to the said Benjamin R. Wallace in hand paid by the said William W. Wallace at or before the sealing and delivering of these presents, the receipt of which is hereby acknowledged, and in fulfillment of a former, but defective, conveyance to the said Wm. W. Wallace, bearing date the 3d of September, 1845, and recorded in the county of Houston, Texas, he, the said Benjamin R. Wallace, and Rebecca, his wife, have given, granted, bargained, sold and conveyed, and by these presents do give, grant, bargain, sell and convey unto the said Wm. W. Wallace, his heirs, etc., forever, the following parcels or tracts of land, towit: (Description omit- ted.) To have and to hold the half league of land herein conveyed, and containing two thousand two hundred and fourteen acres to him the said Wm. W. Wallace, his heirs, etc., forever, but in trust to hold the same for the sole, separate and exclusive use, benefit and behoof of the said Mary E. Wal- lace for and during the term of her natural life, so that neither her present nor any future husband shall have any interest in or control over the same, and in trust to hold the remainder thereof in fee for such person as the said Mary E. may appoint by either will or deed, and in default of such appointment, then for the children of the said Mary, the shares of the daughters to be held for their sole, separate and exclusive

use and benefit. But the said Mary E. Wallace, it is understood, is to have full power, authority and right during her lifetime, and the said Wm. W. Wallace after her death and during the minority of any of her children, if the said Mary should fail to exercise her power of appointment, to sell and convey to any purchaser the whole or any part of the said half league of land, and invest the proceeds of such sale in other property in or out of Texas to be held to and upon the uses and trusts herein declared and set forth. And as to the other parcel of land, being the quarter league herein conveyed, containing eleven hundred and seven acres, the same is to be held in fee forever by the said Wm. W. Wallace and his heirs to his and their only proper use, benefit and behoof. And the said Benjamin R. Wallace and Rebecca, his wife, for themselves, their heirs, executors and administrators do covenant and agree with the said Wm. W. Wallace in his own right and as trustee that they are seized in fee of the lands herein conveyed, that they have a perfect right to convey the same in fee, and that they shall, will and do hereby warrant and defend the same to be free from the claims of all persons whatever. In witness whereof, they, the said Benjamin R. Wallace and Rebecca, his wife, have hereunto set their hands and affixed their seal the day and year first written. B. Rush Wallace. [Seal.] Rebecca R. Wallace. [Seal.]"

The rights of the plaintiffs in the suit, and of the appellant lumber company, depend upon the construction that should be given that instrument. B. R. Wallace was a brother to W. W. Wallace. W. W. Wallace and Mary E. Wallace were husband and wife. The former died April 3, 1891, and the latter January 11, 1901. They had in all eight children. One of these died in infancy and before the execution of the deed above mentioned. Five were living at the date of that instrument. Two of these died unmarried and without issue before the death of their father W. W. Wallace. Three of the remaining children died before the death of their mother, all of whom left issue. Only two of the eight survived the mother. Those were Mrs. Annie B. Arnold, wife of R. P. Arnold, and Mrs. Florence C. Johnson, wife of H. H. Johnson. The two former are parties to this suit; the two last named are not. W. W. Wallace left a will, in which he devised all of his property of every character to his wife, Mary E. Wallace. Mary E. Wallace left a will containing, among others, the following provisions: "Third. The remaining portion of my real estate, situated in Texas and elsewhere, I hereby bequeath to my children, W. W. Wallace, Annie B. Arnold, Florence C. Johnson, and the children of my son B. R. Wallace, deceased, and to Richard and William Waterhouse, the children of my deceased daughter, Mrs. Rosalie Waterhouse, to be equally divided between them, the children of B. R. Wallace to receive their father's share, and Richard and William Waterhouse to receive their mother's share. I hereby revoke any and all former wills made by me. In witness whereof, I have hereunto set my hand and signature this the 9th day of January, A. D. 1899." The evidence shows that Mary E. Wallace, through another acting as her attorney, had previously conveyed some portions of the land described in the deed from B. R. Wallace and wife to W. W. Wallace as trustee, but that there was remaining of that original tract 757 acres at the time of her death, and that is the land involved in this suit. In February, 1901, the will of Mrs. Wallace was presented for probate in the county court of Taylor county by H. H. Johnson, husband of her daughter Florence C., who was afterwards appointed administrator with the will annexed. In the inventory returned by Johnson is included the land in controversy listed as the property of Mrs. Mary E. Wallace. The only other real property shown by the inventory to have belonged to her at the time of her death was a lot in the town of Abilene, Taylor county. The inventory also shows that Mrs. Wallace left some money and a number of notes and claims against other parties. There were no debts against her estate except that incurred during her last sickness and her funeral expenses, which amounted to $65. In April, 1901, Johnson as administrator applied for and obtained an order from the county court authorizing him to sell the land involved in this suit inventoried by him as a part of the estate of Mrs Wallace; the purpose assigned being to secure funds with which to pay the debt of $65 and the expenses of the administration, which latter were estimated at $250. The land was sold by virtue of an order granted by the court, and was purchased by E. A. Blount, under whom the Southern Pine Lumber Company now claims title.

In addition to the deed from Johnson as administrator to Blount, appellants also rely for title upon certain deeds made by some of the heirs of Mrs. Wallace after that sale. One of these was a deed dated March 17, 1906, executed by Mrs. Johnson joined by her husband and the appellee Annie B. Arnold, conveying to E. A. Blount their entire interest in the Gibbs tract of land. The evidence shows that R. P. Arnold and Annie B. were husband and wife at the time, but that the husband failed to join in the deed; and upon that ground the validity of the instrument was attacked by them. Another deed relied upon by the appellants is one from S. M. Johnson purporting to act as attorney in fact for Richard Waterhouse, one of the appellees, who in this suit claims title to an undivided one-fourteenth interest in the land. This deed was dated August 25, 1902.

Upon the last trial the court gave the jury the following charge: "In this case you will

return a verdict for a three-seventh undivided part or interest in the 757 acres of land described in plaintiffs' petition, for the plaintiffs, except Annie B. Arnold, and as to these plaintiffs you will be governed by the following instructions: As to the one-seventh interest in the land sued for by Arnold and his wife, you will find a verdict in their favor unless you should find against them from a preponderance of the evidence on one or both of the propositions hereinafter submitted. (Then follow instructions regarding the facts relative to the separation of Arnold and wife at the time she signed the deed.) You will therefore answer two questions: First, was Annie B. Arnold guilty of fraud, as above defined, in the execution of the deed to Blount? Second, were Annie B. Arnold and R. P. Arnold permanently separated, as above defined, at the time of the execution of the deed to Blount? You will find for Southern Pine Lumber Company and against J. E. Stephenson and H. N. Street on their warranty for $2,595.42, and if you find in favor of Arnold and wife you will add to this amount $865.14, making a total of $3,460.56, together with 6 per cent. per annum interest thereon from March 28, 1907. You will find in favor of Southern Pine Lumber Company and against J. L. Stephenson for $837.14. You will find in favor of Southern Pine Lumber Company and against E. A. Blount, if you should find in favor of Arnold and wife, the sum of $586.14; and, if you should find against Arnold and wife, you will find against Blount for the sum of $262.75." A verdict was returned responding to the peremptory instructions given and also finding in favor of Mrs. Arnold and her husband upon the issues submitted regarding their separation from each other at the time of the execution of the deed before referred to. The court entered a judgment in accordance with the verdict and granted the order for partition as prayed for by the plaintiffs.

[1] In view of the peremptory character of those instructions, if the principal questions involved in the case were improperly decided by the court below, the record presents errors which are fundamental, requiring notices in this court without any specific assignment. Searcy v. Grant, 90 Tex. 97, 37 S. W. 320; Olivarri v. W. U. Tel. Co., 116 S. W. 392. We have concluded to consider those questions without reference to the errors assigned.

There is no substantial difference as to the facts between the present record and that of the former appeal, and the legal questions involved in the main issues are also the same. Appellants have reiterated the propositions which, as appellees, they had previously urged, that the children of Mrs. Wallace did not under the deed from B. R. and Rebecca Wallace take a vested remainder; that, if it should be held that they did, it was contingent upon the failure of Mrs. Wallace to exercise her power of appointment and was defeated by the execution of that power contained in her will. We are still unable to concur in this view of the law applicable to this case.

[2] Upon the execution and delivery of the deed from B. R. Wallace and Rebecca Wallace, they as grantors were completely divested of all title to the land, not even retaining any reversionary rights. It was a conveyance made upon a purchase and sale. Had the beneficiaries become extinct without leaving heirs, or without having transmitted their rights to others, B. R. and Rebecca Wallace could have asserted no more rights to the property than could any other stranger.

[3] The question then is: To whom did the fee pass? If we construe the deed according to its manifest intent, Mary E. Wallace took only a life estate. The fact that she was given the power of disposing of the land by sale in addition to her power of appointment, did not enlarge what was otherwise intended as a life estate only. Steiff v. Seibert, 128 Iowa, 746, 105 N. W. 328, 6 L. R. A. (N. S.) 1186, and cases referred to in notes.

[4] W. W. Wallace was given no property interest in the land, but was merely the depositary of the naked legal title, holding it in trust for the real owners of the beneficial interest.

[5] For whom, then, was he holding that which remained after the termination of the life estate of his wife? Evidently for the children, or whomsoever she might appoint. Those who might take by the appointment were not then susceptible of ascertainment, nor could they be till the power was executed. The right which was to come into existence upon the appointment being made was, therefore, so contingent and uncertain that it did not attain to the dignity of an estate. Hence the only beneficial interest conveyed by the deed beyond the life estate of Mrs. Wallace was that conferred upon the children. They then had a present right of future enjoyment, subject to be defeated by the execution of the power by Mrs. Wallace. The contingency which confronted them was one which might defeat an existing right, not one upon which its origin would depend. Under the authorities referred to upon the former appeal this contingency did not prevent the remainder from becoming a vested one. See Arnold v. So. Pine Lbr. Co., 123 S. W. 1162, and cases there cited.

If the children of Mrs. Wallace took a vested remainder under the deed from B. R. Wallace and wife, then upon her death without. having appointed some other person to the estate they held by virtue of their original title. Mrs. Wallace could not take anything from their interest acquired under the deed, except by appointing some other person to the estate.

[6] The interest which one has in an estate is measured by the older and better title.

[7] This much has been said upon this particular question in view of the contention made by appellants that Mrs. Wallace's will should be construed as an execution of the power, and an appointment of the children to the estate. It is argued that the land in suit passed to the children by reason of this appointment, burdened with her debts. The evidence upon the last trial shows that at the time of making her will, and at her death, Mrs. Wallace owned in fee simple an undivided two-sevenths interest in the land, equal to 216 acres. This she had acquired by inheritance from her two children who died in early life, and through the will of her husband, who had also an interest in fee simple by inheritance from the same children. This interest in Mrs. Wallace is sufficient to explain the language used in the residuary clause of her will, which is relied upon for an execution of the power. See the authorities cited upon this proposition on the former appeal.

[8] For the purpose of showing the sense and intention in which Mrs. Wallace used the words "the remaining portion of my real estate situated in Texas," and "my personal property and effects," and for the further purpose of showing that the residuary clause of her will referred to the portion of the south half of the Z. Gibbs survey unsold at her death, the appellants offered in evidence a number of deeds conveying portions of the Gibbs tract of land by Mrs. Wallace through powers of attorney conferred on H. H. Johnson some years prior to her death. Presumably the purpose of this testimony was to show that Mrs. Wallace referred to the remaining portion of the Gibbs tract of land as her property when she executed her will. Upon objection by appellees the court excluded this testimony, on the ground that it was immaterial and irrelevant. In this we think there was no error. Mrs. Wallace by the terms of the deed was invested with the power to sell and dispose of this property during her lifetime, and to invest the proceeds in other property either in or out of Texas, to be held upon the same terms as that which was sold. Her sale of this property might easily have been referred to the exercise of that authority, and furnished no evidence that she claimed absolute ownership, even if such a claim might be considered material.

[9] Appellants also excepted to the refusal of the court to permit them to prove by Mrs. Annie B. Arnold that the notes shown in the inventory of Mrs. Wallace's property were given in part payment for the land formerly sold out of the south half of the Gibbs survey by Mrs. Wallace, and that witness had received portions of those notes and the proceeds thereof as a part of her interest in same under the will of her mother, and that she did so with a knowledge that they were given in part payment for the property described in the deed from B. R. Wallace and wife. This testimony when offered was excluded by the court upon the ground that it was immaterial and irrelevant, and we think correctly so. It was immaterial whether in the opinion of Mrs. Arnold her right to those notes was derived from the will of her mother or otherwise. Clearly, if they were proceeds of the sale of my portion of the lands disposed of by her mother under the power of sale given in the original deed, then Mrs. Arnold had a right to her distributive share. By accepting it she would not estop herself from claiming that the land here in controversy did not belong to the estate of her mother. The notes represented no part of the consideration for which it had been sold.

Richard Waterhouse, one of the appellees, claims in this suit an undivided one-fourteenth interest in the land. Appellants offered in evidence the following instrument purporting to be a power of attorney and conveyance of an undivided half interest in the property in controversy, executed by Waterhouse in 1892: "State of Alabama, ——— County. Know all men by these presents, that I, *Richard Waterhouse* of ——— have this day constituted and appointed *Silas M. Johnson* of Jefferson my true and lawful attorney for me, and in my name to *represent me in all matters relating to any lands real estate or personal estate, to which I am entitled as heir at law or as devisee of my father Gen. Richard Waterhouse, deceased, and my mother Rosalie Waterhouse (née Wallace) and as heir or devisee of my grandfather Wm. W. Wallace and grandmother Mary E. Wallace, both deceased, to sue for or otherwise recover, get possession, sell and convey by general warranty deed or other instrument, all of my interest in said real and personal property of whatsoever description, or to compromise with adverse claimants of same, or to exchange for other property, and to do all other acts and things necessary to be done as fully as I might do if personally present. And whereas, the said Johnson has been at considerable expense and labor in my behalf about said permises, Now therefore in consideration of the expenses incurred and to be incurred of services performed and to be performed, I hereby give, grant, bargain, sell and convey unto the said Johnson an undivided one-half interest in any and all of said property above described, or proceeds of same, to have and to hold unto him and his heirs forever, giving and granting* unto my said attorney full power and authority to do any and all acts necessary and proper to be done in and about the premises. Witness my hand and seal this 25th day of August, 1892. Attest: R. T. Thornton. H. H. Johnson. [Signed] Richard Waterhouse." They also in that connection

offered in evidence a deed from S. M. Johnson to Stephenson and Street, in which he describes himself as agent of Waterhouse; but its legal effect is doubtful. These instruments were excluded upon the following objections made by the appellees: That the execution of the power of attorney had not been proven; that the evidence offered as to its execution showed that if the instrument had been signed at all it had been signed in blank; that it had been materially altered since its execution; and that it was too badly mutilated to be received in evidence. By an order of the court the original instrument was sent up with the record. After an inspection of that original we have concluded that the mutilation is not such as to justify its exclusion upon that ground alone. The appellant's bill of exception shows that the court heard the testimony of two witnesses as to the execution of the power of attorney— H. H. Johnson and Richard Waterhouse. It is stated in the bill that by an agreement between counsel proof of the execution of the deed from S. M. Johnson to Stephenson and Street was waived. According to the testimony of H. H. Johnson, this power of attorney was signed in his presence by Richard Waterhouse at a hotel in Birmingham, Ala., at the time it bears date; and the paper to which the signature was affixed was then a mere blank form of a power of attorney, with none of the blanks filled. He stated that Waterhouse was at the time in some kind of trouble and desired to keep his whereabouts concealed from the officers of Texas, and for that reason preferred that method of transacting his business; that Waterhouse then and there authorized him, the witness, to thereafter, when he deemed it expedient and to the interest of Waterhouse, to fill the blanks with the name of any person as agent whom the witness chose, also authority to insert the powers of the agent and the interest he was to have as expressed in the instrument offered in evidence; that witness was to have the management and control of Waterhouse's property, and to fill those blanks at any time he deemed proper and expedient. He further testified that all that portion of the instrument here shown in italics was thereafter inserted under his direction; that he retained possession of the paper till 1904, and then delivered it to S. M. Johnson, in whose custody it had been since that time. Waterhouse admitted that he had signed a power of attorney to S. M. Johnson, but denied that it was then in blank, or that it contained authority for the agent to do more than to settle the estates of his father and mother, both of whom were then dead. There is a material conflict between the testimony of Johnson and that of Waterhouse. If we accept the statements of Waterhouse, this instrument is not the one he signed; or, if it is, it has since been materially altered. If Johnson's testimony is to be taken as true, then this is the identical paper signed by Waterhouse upon the occasion he refers to, but it was signed when it contained nothing but a printed blank form, which was afterwards filled out by him under verbal authority then given by Waterhouse. Unless we can say from the testimony of Johnson that the execution of a valid and binding instrument is not shown, the issue as to its execution should have been submitted to the jury under appropriate instructions, and the court erred in the manner complained of.

[10] The question is narrowed to this: Was the signing of the blank form, with verbal authority to H. H. Johnson to thereafter at his discretion write over the signature in the blank form what he says was written under his direction 12 years afterward, legally sufficient to bind Waterhouse to the instrument when those instructions were carried out? Article 624 of the Revised Civil Statutes provides: "Conveyances must be in writing, signed and delivered. No estate of inheritance or freehold, or for a term of more than one year, in lands and tenements, shall be conveyed from one to another, unless the conveyance be declared by an instrument in writing, subscribed and delivered by the party disposing of the same, or by his agent thereunto authorized by writing." The statute clearly contemplates that the name of the grantor shall be "subscribed" to a writing having the essential substance of a conveyance; that this signature shall be affixed by the party conveying, or by some one thereunto authorized by him in writing. The purpose of the law is to commit to writing the evidences upon which land titles shall rest. Where a deed is executed for another by an agent, the requirement that the authority of the latter shall be in writing and signed by the grantor is just as imperative as that provision that the deed itself shall be in writing and signed by the party conveying. The affixing of the signature to an instrument is a written assent to the contents, and that is what the statute intends shall be done when one conveys land, or creates an agency to convey. The signing of a blank paper, or a printed blank form which without the insertion of other matter is meaningless, is not the execution of a written instrument. It is true the signature may be first affixed, and the substance of the conveyance, or power of attorney, be subsequently written above it under such circumstances as to make the instrument when complete valid and binding; but it becomes so because of its adoption by the grantor. It is also held that parol authority to fill blanks which have been left in an instrument required by law to be in writing is sufficient. McCown v. Wheeler, 20 Tex. 372; Ragsdale v. Robinson, 48 Tex. 380; Threadgill v. Butler, 60 Tex. 599. But there is a distinction between the cases above referred to and one where a grantor signs in blank and verbally com-

mits to another the authority to write, or not write, a conveyance or power to convey over his signature, and also the discretion of determining whether or not the conveyance or power of attorney shall be filled and delivered, to whom the grant shall be made, to what property it shall apply, the extent of the agent's authority, and under what circumstances it shall be delivered. In the last-named case there would be virtually a parol delegation of the power to execute and deliver the deed of conveyance, or power of attorney, an agency which the statute requires to be in writing. Such was the authority by which H. H. Johnson claims he was empowered to fill the blanks and deliver the instrument offered in evidence. If Waterhouse could by parole authorize him to use his judgment and discretion in filling the blanks and delivering this instrument, why may not any grantor sign his name to blank paper, leave it with an agent with parol authority to thereafter at his discretion write over that signature the name of any purchase to whom the agent may sell, the description of any property which the agent may select, and such terms as the agent may deem satisfactory? Where one fills a blank in an incomplete instrument at the instance of the grantor, or writes over his signature and at his dictation an entire conveyance, or power of attorney, the agent is merely acting as an amanuensis performing a simple clerical act. But not so in the other; there he is purporting to act as the personal representative, the alter ego, of the grantor. This, we think, is contrary to the spirit, if not the letter, of the statute. We therefore conclude that the court committed no error in excluding the power of attorney offered in evidence. 2 Cyc. 166, 167, and cases cited. We do not pass upon the question as to whether or not the deed from S. M. Johnson to Stephenson and Street is, upon its face, sufficient to bind Waterhouse.

It is not here claimed that any of the elements of estoppel exist in favor of any of the appellants that would prohibit Waterhouse from denying the validity of the instrument in question.

[11] One who relies upon facts which would estop another from asserting the legal insufficiency of a conveyance has the burden of alleging and proving them.

Assignments Nos. 14 and 15 complain of the court's action in limiting the recovery on the warranty against E. A. Blount to two-sevenths of said 757 acres, and allowing interest on the amount only from the date of judgment, and in refusing a special charge requested by the lumber company. The statements which follow these assignments do not indicate how or by what ruling the court fixed the limitation complained of, neither do they set out the special charge which it is claimed the court should have given. The record shows that four-sevenths of the title failed; that four-sevenths of the consideration received by Stephenson and Blount from J. E. Stephenson and H. N. Street would amount to $1,207 and possibly a small fraction over. The judgment shows that appellants were awarded a recovery of $1,423.40 against the two. The record also shows that the judgment entered was in accordance with the verdict of the jury. No complaint is made of the charge in that respect.

From what is styled assignment of error No. 19 we copy the following: "The defendants J. E. Stephenson and H. N. Street only assign as error the action of the court in allowing interest against them on their warranty from the date of their deed." The proposition is that the appellants "believed that the correct rule in this case will allow interest from the date of the conveyance; but, if the court should hold otherwise as to J. L. Stephenson and E. A. Blount, then interest should be allowed against said appellants only from the date of judgment, and said appellants submit the proposition that the same sort of a judgment as to interest should be allowed against them as is allowed against J. L. Stephenson and E. A. Blount."

[12] There is no statement following this proposition, and for that reason it should not be considered; neither can we construe it as being a specific complaint of any particular ruling of the court. At best it is only a qualified complaint. The assignment also can only be urged against the judgment rendered in favor of the Southern Pine Lumber Company, a coappellant and who joins in this same brief. To say the least of it, it is somewhat anomalous for appellants joining in the same brief to develop antagonisms such as that disclosed in this instance.

[13] The following rule as to allowing interest on the amount of the purchase money recovered where title has failed has been approved by our Supreme Court: "Interest is not recovered when the premises have been occupied by the warrantee, and he has not accounted, nor is accountable for the rents and profits. It would be unjust. He who buys a farm, or house and lot, agrees to part with the use of the consideration forever for the use of the farm, or house and lot, forever; as long as he has the use of the farm, or house and lot, so long should the seller have the use of the consideration. * * * In case of eviction by the owner of the superior title he is entitled to recover mesne profits for such period as is allowed by the statutes of limitation. * * * Whenever the circumstances are such as to preclude any recovery for mesne profits interest will not be allowed until after eviction." Brown v. Hearon, 66 Tex. 65, 17 S. W. 395; Boone v. Knox, 80 Tex. 644, 16 S. W. 448, 26 Am. St. Rep. 767. The petition of the plaintiffs in this case does not claim any mesne profits, nor is there any evidence

in the record as to whether or not the land was occupied, or any rents or revenues derived from its use. We are therefore unable to say that the judgment as to the interest was wrong.

The judgment is affirmed.

WILLSON, C. J., not sitting.