CHAPMAN, Com'r of Insurance and Banking, v. CLARK et ux. (No. 2875.)

(Court of Civil Appeals of Texas. Texarkana. April 3, 1924. Rehearing Denied May 22, 1924.)

1. Judgment ☞518—Foreclosure of vendor's lien held assailable in cross-action in trespass to try title by one claiming under foreclosure.

Judgment foreclosing vendor's lien on homestead conveyed by deed intended as mortgage to secure loan to vendors and vendee by plaintiff bank, which had knowledge that sale was simulated to incumber homestead with lien in violation of Const. art. 16, § 50, may be set aside in cross-action by mortgagors sued in trespass to try title by banking commissioner, who succeeds to only such rights as bank had.

2. Estoppel ☞115—Party asserting estoppel must allege and prove facts constituting it.

To make issue of estoppel, party asserting it must allege and adduce testimony tending to show facts constituting estoppel.

On Appellant's Motion for Rehearing.

3. Homestead ☞131—Finding that bank holding vendor's lien notes knew that land was homestead and sale simulated held warranted.

Finding that bank, taking vendor's lien notes as security for money loaned to vendors and vendee, knew that land conveyed was vendors' homestead and that sale was simulated to incumber it with lien, held warranted by testimony in banking commissioner's action of trespass to try title against vendors.

4. Estoppel ☞119—Issue of estoppel to assert title by record in vendor's lien foreclosure suit not for jury.

Testimony supporting plea of estoppel to assert title to homestead by record in bank's suit to foreclose vendor's lien would not make issue for jury, effect of record being for court.

5. Trial ☞350(1)—Submission of issues of estoppel held properly refused as presenting mixed questions of law and fact.

Submission of special issues to jury as to estoppel to claim that deed was intended as mortgage and to set up title to, or interest in, property, held properly refused as presenting mixed questions of law and fact.

6. Judgment ☞461(5)—Finding that bank taking vendor's lien notes practiced fraud entitling vendors to attack judgment of foreclosure held warranted.

Evidence held to warrant finding that bank taking vendor's lien notes as security for loan to vendors and vendees practiced fraud, entitling vendors to attack judgment foreclosing lien by cross-action in banking commissioner's action of trespass to try title, so as to warrant assumption of such finding in support of judgment setting aside foreclosure.

Hodges, J., dissenting.

Appeal from District Court, Cherokee County; L. D. Guinn, Judge.

Action by J. L. Chapman, Commissioner of Insurance and Banking, against W. A. Clark and wife. Judgment for defendants, and plaintiff appeals. Affirmed.

This was an action of trespass to try title, statutory in form, brought by appellant as Commissioner of Insurance and Banking against appellees W. A. Clark and his wife, in which judgment was rendered in favor of appellees. The land in controversy was 143 acres of the J. H. Russell survey in Cherokee county. It appeared from testimony heard at the trial that appellees owned the land and were using it as their homestead November 22, 1919, when, by an instrument purporting to be a deed, they conveyed it to one T. I. Knight. According to recitals in the instrument, the consideration for the conveyance was $3,575 then paid by Knight and the execution and delivery by him of two promissory notes for $1,430 each, payable to Clark's order, one January 1, 1921, and the other January 1, 1922, and secured by a vendor's lien on the land. Appellees' contention in their pleadings and testimony was that the land was their homestead, and that while the instrument referred to was in form a general warranty deed, it was intended by the parties to it to be and to operate as a mortgage only, to secure $2,000 which Clark and Knight had arranged to borrow and did borrow of the Farmers' Guaranty State Bank of Jacksonville. It was charged that no part of the recited cash consideration of $3,575 was ever paid or intended to be. It was charged, further, that the arrangement for borrowing the $2,000 was between the parties to the instrument and the bank, and was that appellees should make the conveyance to Knight, who was to make the two $1,430 notes, which the bank was to take and hold as security for the $2,000 it was to lend Clark and Knight. And it was charged, further, that the transaction was carried out as so arranged. It further appeared that the notes made by Knight contained a stipulation that interest specified should be paid annually, and that a failure to so pay same should entitle the holder to declare both notes due. The interest not having been paid as agreed upon, the bank exercised the option given it as the holder of the notes, and on November 30, 1920, commenced suit thereon in the district court of Cherokee county to recover the amount thereof and to foreclose a vendor's lien to secure them, which it claimed existed on the land. Knight, appellees, and one Cameron, to whom, it seems, Knight had conveyed the property, were the defendants in the suit. At the trial Cameron disclaimed any claim of right, title or interest in the land, and by the judgment, rendered December 16, 1920, he was dismissed from the suit. Neither appellees nor Knight answered the suit, and the judgment as to them was by default.

It was in favor of the bank against Knight for the amount of the notes, and against both him and appellees for a foreclosure of the vendor's lien. The land was afterwards sold by the sheriff as directed in the judgment, and was purchased by one Weatherby, special agent acting for appellant, who, the bank having failed, had taken charge of its affairs as provided by law. In their pleadings and testimony appellees attacked the judgment and sale by the sheriff thereunder as void for duress, which was specified, and fraud, in particulars set out, which, they charged, were practiced on them by the bank. The prayer in their answer was that the judgment in said suit commenced November 30, 1920, and the lien asserted on their homestead by virtue of the notes referred to, or otherwise, "be canceled, set aside and held for naught." The jury found, in response to special issues submitted to them, (1) that the land in controversy was appellees' homestead at the time they conveyed it to Knight, and (2) that the instrument by which they made such conveyance was a mortgage. The appeal is from a judgment in appellees' favor for the land.

Carter & Stone, of Dallas, for appellant.

Norman, Shook & Gibson, of Rusk, for appellees.

WILLSON, C. J. (after stating the facts as above). The findings of the jury, (1) that the land was appellees' homestead at the time they executed and delivered the instrument purporting to be an absolute deed conveying it to Knight, and (2) that that instrument was intended to operate only as a mortgage to secure money loaned by the bank to Knight and appellee W. A. Clark, were warranted by the testimony, as was also the finding of the court, involved in the judgment (article 1985, Vernon's Statutes), that the bank knew that the sale of the land to Knight was a simulated one in pursuance of a scheme to incumber appellees' homestead with a lien in violation of law. If, therefore, the court should have instructed the jury to find in appellant's favor, as he insists it should have done, it must have been because of the judgment in the bank's foreclosure suit referred to in the statement above. Const. § 50, art. 16; Bludworth v. Dudley (Tex. Civ. App.) 173 S. W. 561; Henderson v. Wilkinson (Tex. Civ. App.) 159 S. W. 1045; Insurance Co. v. Slovak (Tex. Civ. App.) 217 S. W. 200; Barnett v. Paving Co. (Tex. Com. App.) 234 S. W. 1081; Graves v. Kinney, 95 Tex. 210, 66 S. W. 293.

[1] Appellant's contention with reference to that judgment was and is that unless and until set aside it was conclusive of any right in appellees to assert the invalidity of their deed to Knight and claim the land as their homestead; and further, that it could not be set aside in a cross-action by appellees in this suit, but must be, if at all, in an independent suit prosecuted by appellees for the purpose. The authorities, as we understand them, are to the contrary of the latter part of the contention and uphold appellees' claim of a right on sufficient grounds, sufficiently pleaded and established by competent testimony, to such relief by a cross-action in a suit like this one is. Moore v. Miller (Tex. Civ. App.) 155 S. W. 573; Patrucio v. Selkirk (Tex. Civ. App.) 160 S. W. 635; Ives v. Culton (Tex. Civ. App.) 197 S. W. 619.

In the light of authorities cited above there can be no doubt that the facts alleged and proven, to wit, that the land was appellees' homestead and that the deed to Knight operated as a mortgage only, entitled appellees to have the foreclosure set aside, as against the bank, for, as shown by testimony and as found, it must be assumed, by the trial court, the bank had full knowledge of, if it was not a party to, the scheme to incumber the homestead with a lien to secure the notes sued upon. Appellant in his official capacity succeeded to only such rights as the bank had, and therefore appellees were entitled to the same relief as against him they were entitled to as against the bank. Brady v. Cobbs (Tex. Civ. App.) 211 S. W. 802; Hall v. Bank (Tex. Civ. App.) 255 S. W. 506.

[2] Because, as indicated by what has been said, we think the trial court did not err when he refused the request of appellant referred to, that he instruct the jury to find in his (appellant's) favor, we overrule the contentions based on such refusal. And we also overrule the contentions based on the refusal of the court to submit an issue to the jury as to estoppel on the part of appellees to assert in this suit that the land was their homestead and that they were entitled to claim it as such. We do not think such an issue was made by the testimony. Bailey v. Bailey (Tex. Civ. App.) 188 S. W. 264. To make such an issue appellant not only must have alleged, but he must have adduced testimony tending to show, the existence of facts constituting the estoppel. Howe v. O'Brien (Tex. Civ. App.) 45 S. W. 813; Lumber Co. v. Arnold (Tex. Civ. App.) 139 S. W. 917. He adduced no such testimony.

Other contentions presented in appellant's brief are based on rulings of the court with reference to either the admission or the rejection of testimony. We are inclined to think none of the contentions is meritorious, but if any of them are we think the error of the court with reference to them should be treated as harmless.

The judgment is affirmed.

## On Appellant's Motion for Rehearing.

[3] Appellant insists that the testimony did not warrant a finding that the bank knew that the land in controversy was appellees' homestead and that the sale thereof to Knight was a simulated one, and therefore that we should not have assumed that the trial court found that the bank had such knowledge.

The testimony which we thought, and still think, warranted such a finding, was that of appellee W. A. Clark as follows:

"We [the witness and Knight] decided to fix the place and he would make me notes so we could borrow the money on the notes and he did so, and we got the money. We borrowed the money from the Farmers' Guaranty State Bank—from Howard's bank. Up to that time I had not talked to Mr. Howard about how to fix it so we could borrow the money on that place, but I told him when I went to get the money that we had conditionally 'fixed it and the notes to get the money on them; that was when we went to get the money, but before we had borrowed it. It was the understanding that I had not sold the place to Mr. Knight, but that we just made the notes to get the loan. * * * Q. What became of the $2,000 you got at the bank on those notes? A. I reckon he squandered it. I didn't see any of it. I mean that Mr. Knight got the money. We told Mr. Howard·all about this when we went [to] get the money. [Carter, the attorney in asking the question, made that statement. The witness didn't state that he told him all about it]. I told him that it was a conditional sale. * * * At the time the notes were given I told Mr. Howard there was no sale."

[4] A contention vigorously urged by appellant is that we erred in holding that the testimony did not make an issue for the jury as to estoppel on the part of appellees to assert that the land was their homestead and that they were entitled to claim it as such. We do not think the holding was incorrect, but it may have been misleading, because of the failure of the writer in announcing it to state that the only matter pleaded by appellant as such an estoppel was the record in the bank's foreclosure suit. Testimony supporting that plea would not have made an issue for the jury, for the effect of that record was for the court, and not the jury, to decide. It would seem, therefore, that the holding that the testimony did not make an issue for the jury as to an estoppel was not erroneous.

[5] But if issues for the jury as to estoppel had been made by both the pleadings and the testimony in the case, appellant's contention that the court erred when he refused to give to the jury special issues requested by him as follows should have been overruled.

(1) "Are the defendants [appellees] estopped from claiming the deed from them to Knight is and was intended as a mortgage rather than an absolute deed?"

(2) "Are the defendants estopped from setting up herein that they have title to or an interest in or claim to the property described in plaintiff's petition?"

It is plain that the issues as formulated presented mixed questions of law and fact, and for that reason should not have been submitted to the jury in any event. Davis v. White (Tex. Civ. App.) 207 S. W. 679; De Arcy v. Music Co. (Tex. Civ. App.) 208 S. W. 381; Mason v. Gantz (Tex. Civ. App.) 226 S. W. 435; Oil Co. v. Howard (Tex. Civ. App.) 256 S. W. 340; Watson v. Patrick (Tex. Civ. App.) 174 S. W. 632.

The theory on which the judgment was affirmed was that it appeared from findings made by the jury and a finding the court was authorized to make, and which it was therefore assumed he did make (1) that the land was appellees' homestead at the time they conveyed it to Knight; (2) that the sale to Knight was a simulated one in pursuance of a scheme to create a lien on the homestead to secure a loan of money made by the bank to Knight and appellee W. A. Clark; and (3) that the bank at the time it made the loan, at the time it obtained the judgment in its foreclosure suit, and at the time it had the land sold under the judgment, knew that the land was appellees' homestead and knew that the sale 'thereof to Knight was a pretended one for the purpose of securing said loan.

There can be no doubt that appellees on the findings of the jury were entitled to the relief they obtained, if they had a right to assert as against the bank and its representative that the land was their homestead and that the conveyance thereof to Knight operated as a mortgage only. And in view of the finding warranted by the testimony, and which it is therefore assumed the court made, that the bank knew that the land was appellees' homestead and that the sale to Knight was a pretended one, there can be no doubt that appellees had such a right unless the judgment in the bank's foreclosure suit operated to deprive them of it. We were of the opinion that the bank, having knowledge of the facts which rendered the conveyance to Knight void, was in no better position after it obtained the judgment and sold the land thereunder than it was in before it obtained the judgment. To hold otherwise, it seemed to us, would be to ignore the inhibition in the Constitution against creating a lien on a homestead (except for purposes specified, not including the one involved here), and the declaration therein that "all pretended sales of the homestead involving any condition of defeasance shall be void." We did not and do not think it ought to be held that the parties could use the courts as a means to accomplish what the Constitution denounced, and by a judgment validate void transactions they had engaged in. If the rule as to the conclusiveness of judgments applied in ordinary cases can be invoked in this kind of a case, the inhibition in the Constitution intended to protect the homestead from sale for indebtedness of its owner cannot be relied upon to always accomplish its purpose.

[6] But we do not think if the rule should be applied in this case its application would require a reversal of the judgment, for the testimony went farther than to show that the land was homestead, that the sale to Knight

was a simulated one, and that the bank knew it. Appellee W. A. Clark testified that Howard, the bank's president, took up with him the matter of paying the Knight notes, agreed to "fix it in four notes," and that he should have the place back, and then went with him to Holloway, the bank's attorney, stating to Holloway that "he [Howard] wanted to fix it up to keep him [Clark] out of trouble and maybe out of the pen." What Howard thought Clark had done which was likely to get him into trouble and may be into the penitentiary was not shown by the testimony. Clark testified further that Holloway said a suit would be necessary to get the matter straight. He testified, further, that both Howard and Holloway asked him not to contest the suit. And he testified further that after the land was sold under the judgment the bank obtained in the suit he "offered to pay the original debt and the interest on it," and that "they refused to let him do it." Mrs. Clark testified that Howard came to her home and talked to her about the indebtedness he claimed against the land, and that thereafter she consulted with Mr. Norman, an attorney, as to her rights in the matter, and employed him to represent her. Mr. Norman, she said, directed her to "bring the citation to him when it was served on her." When the citation in the suit was served on her, she did not take it to Mr. Norman, however, "because," she said, quoting:

"I was afraid that they would hurt my husband; they said they would send him to the pen and claimed that he had used the money under false pretense. Several of them claimed that he did. My husband repeated a conversation he had with Mr. Howard and Mr. Holloway about this matter. * * * I don't hardly know what my husband said about them sending him to the pen; he told me it would save him trouble for me not to contest the suit, and I think he said they would send him to the pen if I did. He said they promised him they would give him a deed back in thirty days if we didn't appear and contest the suit, and if he did they would send him to the pen. That was the reason I didn't come and bring the citation to Mr. Norman and let the suit go by default and at the time the judgment was made and the sale occurred I was acting on that fear and promise. If it had not been for those two things I would have been down here to contest it; I had already made arrangements with Mr. Norman about the fee."

Mr. Norman testified that Mrs. Clark arranged with him to defend the suit, and that he told her to bring him all the papers when she was served with a citation. He said she did not bring him the citation, and he did not know the suit had been filed until after the term of court at which the judgment was rendered commenced. He said, further, that he then stated to Holloway, the bank's attorney, that he would file an answer to the suit for appellees, and that Holloway replied that "it was not necessary—that Mr. Clark had been to see him and that they had reached an agreement in the matter."

We think the testimony referred to warranted a finding that the bank practiced fraud on appellees which entitled them to attack the judgment as they did, and therefore that it should be assumed in support of the judgment that the court made such a finding.

The motion is overruled.

HODGES, J. (dissenting). In dissenting from an affirmance of the judgment rendered in this case I shall accept as true the facts found by the jury and those testified to by the appellee and his witnesses in the trial. The suit is one by the appellants against the appellees to recover possession of a tract of land. As evidence of title the appellants proved the followings facts: (1) A deed, fee simple in form, from Clark and wife conveying the title to Knight, in consideration of a cash payment and the execution of two vendor's lien notes payable to Clark; (2) an assignment of the notes by Clark to the bank, and a suit on those notes in which a judgment was rendered in favor of the bank, foreclosing the vendor's lien, and ordering a sale of the land; (3) the issuance of the order of sale, a sale of the land, and a purchase by a representative of the bank; (4) a deed from the sheriff conveying the property to the purchaser. All of those proceedings were regular and in proper form. The judgment was, upon its face, valid and binding upon Knight and Clark and wife. Those facts made a complete prima facie case in favor of the appellant, and, unless met and overcome in some legal manner, required the trial court to direct, as requested, a verdict in favor of the plaintiffs below.

In order to entitle the appellees, defendants below, to defeat this suit, it devolved upon them to prove (1) that they had a good defense to the former suit, and (2) that they were prevented by conditions for which they were not responsible, or by the fraud of the plaintiffs in that suit, from presenting that defense at the proper time. Until that judgment is set aside, or modified, it presents a complete estoppel to the assertion by Clark and wife of any defense to the merits of that controversy which should have been considered in that trial.

That judgment is not void for lack of power in the court to render it, nor is it voidable, if it is wrong, it is merely erroneous. The plaintiffs' petition disclosed a subject-matter within the jurisdiction of the court; and the record shows that Clark and wife had been properly cited; but that they failed to appear and file an answer. As a defense to the merits in that case Clark here sets up a claim that the property was his homestead at the time of the conveyance to Knight, that the deed to Knight was intended only as a mortgage, and that the bank officials knew all those facts at the time the notes were as-

signed to the bank by Clark. Those facts, if true, would have been a good defense in the trial of that suit; but in order to be available in this controversy Clark must show some legal or equitable reason for reopening that judgment. He must prove that the failure to appear and contest that suit was not due to his own negligence. Johnson v. Templeton, 60 Tex. 238; Merrill v. Roberts, 78 Tex. 28, 14 S. W. 254.

The facts pleaded as grounds for reopening that judgment are duress and fraud. The evidence in support of the charge of duress is so clearly insufficient that it is unnecessary to discuss it. As proof of fraud Clark testified that after suit on the notes had been filed, and after citation had been served on him and his wife, he conferred with the president and the attorney for the bank and discussed with them the propriety of his defending the suit; that they advised him not to make any defense, telling him, in substance, that it would get him 'into trouble. They also told him that it was necessary for the suit to go to judgment in order that matters might be "straightened out" so that the bank could reconvey the land to him. He further testified, in effect, that it was agreed that if the suit went to judgment the bank would later reconvey the land to him upon his execution of vendor's lien notes for the amount of the debt due the bank. His wife testified that she conferred with an attorney, with a view of making a defense, but finally concluded not to do so. It is not alleged or shown that Clark was ignorant of his rights, or that any false representations of existing facts were made to induce him not to answer in the case. On the contrary, it appears that he relied on the promise of the president of the bank to buy the property at the foreclosure sale and reconvey it to him. That was not done, doubtless because the bank was taken over by the commissioner of insurance and banking. But, even if the bank had willfully refused to carry out that agreement, such refusal would have furnished no grounds for reopening the judgment. Had that agreement been fully performed Clark, according to his own testimony, would have held the land subject to the vendor's lien in favor of the bank to secure the payment of the old debt. Let us assume that this agreement had been fully performed by the bank; that the property had been reconveyed to Clark upon the execution of his vendor's lien notes for the original debt; could he, in a suit to foreclose that lien, go behind that judgment and set up his homestead rights and the invalidity of the conveyance to Knight? Clearly, he could not. If that be true, then Clark cannot claim as a ground for reopening a judgment, to let in the homestead claim, the breach of an agreement which would have resulted in a judgment completely estopping him from thereafter asserting that defense.

The right to reopen the former judgment is apparently defended upon the ground that the homestead cannot legally be incumbered with a mortgage of this kind, and therefore the courts have no power to decree a foreclosure of an invalid lien. However correct that proposition may be, it has no application to this controversy. The controlling question here is, not one relating to the power of the court to render a judgment foreclosing a lien on the homestead, but one involving the legal effect which shall be given to a judgment foreclosing a vendor's lien—an action against which a homestead claim could not be asserted. Upon the face of the record the former suit was one of that kind, and the court had jurisdiction over all interested parties. Such a judgment as that cannot now be set aside for lack of power to render it. Williams v. Haynes, 77 Tex. 283, 13 S. W. 1029, 19 Am. St. Rep. 752; Sanger v. Trammell, 66 Tex. 361, 1 S. W. 378. Until it is set aside it creates an estoppel. If the bank had bought the notes of Knight without notice of the homestead claim and the simulated character of the sale, clearly Clark would now be estopped by his deed, and the court would have the power to foreclose the vendor's lien, regardless of what might be the homestead rights of Clark and wife. Or had the homestead been sold under the decree of foreclosure to one who was ignorant of the true character of the transaction between Clark, Knight, and the bank, the judgment directing the sale would not be open to attack upon any of the grounds here asserted by Clark. Dean v. Dean (Tex. Civ. App.) 165 S. W. 90, and cases there cited. Judgments foreclosing liens upon property used for homestead purposes are sustained, not because courts have authority to disregard the constitutional inhibition against incumbering homesteads, but upon the ground that the homestead claimant is, under certain conditions, estopped to plead and prove his homestead rights and the simulated character of his conveyance. Clark is not here estopped by his deed, because he alleged and proved that the bank purchased the notes with notice that the deed was intended only as a mortgage on the homestead. But he is estopped by the judgment which he permitted to be rendered against him in a suit based upon that deed. After the rendition of a valid judgment it will be presumed that the evidence supported the legal conclusions of the court upon the issues presented by the pleadings of the parties. Such a judgment is not only conclusive as to all issues which the parties actually tried, but of all those which they might have tried. Nichols v. Dibrell, 61 Tex. 539; Beaumont Irrigating Co. v. De Laune, 107 Tex. 381, 180 S. W. 98; Pickford v. Walter, 225 U. S. 651, 32 Sup. Ct. 687, 56 L. Ed. 1240. Estoppel by deed is based upon equitable rules which are adopted to protect purchasers from fraud. Estop-

pel by judgment is based upon principles of public policy. The last is equally as effective as the other.

But if we construe Clark's testimony as showing a collusive scheme entered into by all the parties, including the bank officials, to validate an invalid mortgage through the medium of a judgment, he is in no better attitude. Such an agreement would be an undertaking to perpetrate a fraud on the court. In an equitable proceeding to avoid the legal consequences of that judgment Clark cannot set up his own illegal conduct as a ground of relief. However plain his case may be, the court will leave him just where he had placed himself. But no such facts are pleaded, and for that reason alone that defense would not here be available.

My conclusion is that the trial court should have given the peremptory instruction requested by the appellant, and because of that refusal the judgment should be reversed and a judgment here rendered for the appellant.